U.S. DIST COURT FOR THE DIST. OF NEVADA

| Pattison | USDC# 3:22-CV-537-ART-CSD |
| Plaint. | |
| vs. | Plaintiffs Motion for Relief from the |
| Lombardo, et al., | Courts Order ECF. No. 6 / Motion to |
| Defs | Screen the Merits of Pattisons |
| | Complaint / And Motion to Appoint |
| | Pro Bono Counsel |

Dear Your Honor,

heres everything Butch told me - A Court of Appeals reviews a district Courts denial of Counsel to an indigent CIVIL litigant for abuse of Discretion. A district Court abuses its discretion if its discretion rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact.

The Court found I do not have a frivolous case at the threshold, But failed to Screen My Complaint on the **Merits** "as is".

Your Honor, I thouroughly studied the Courts order Analysis and My Pro Se inmate Complaint, and have absolutely no understanding of the Courts order ECF. No. 6 and I am Not able to present My case to the Honorable Court pro se from prison, as I didnt complete School, I have no access to necessary resources, like internet, tele-phone, Computer, typewriter, court reporter, person before whom oaths May be administered to help me amend the "**Merits**" of My Complaint.

1

Additionally None of the law framed in ECF. NO. 6 Matches ECF NO 6 conclusion; as all the legal framing goes to An analysis on the **"Merits"** of Pattisons Complaint.

But the Court Did Not Analyze the **Merits** of Plaintiffs Complaint, instead it Made an **"end run"** around the Mandatory Screening Provisions of 28 U.S.C §1915 on the **Merits**, by using process and proceedure. This is Precisely What Magistrate Judge Denney did to me in "Civil Case one", and has left me No remedy but to file the instant action in a seperate Court room, I do not Mind paying seperate fee to recieve Justice

The Plain meaning of the Mandatory Statutory language of 28 USC §1915 does not Allow a Court to forego the Mandatory Screening of Pattisons Complaint on the **"Merits"**.

It may very well be, that After the Court performs a Complete legal analysis, Screening the **"Merits"** of Mr. Pattisons pro se inmate claim, identifying All cognizable claims and dismissing any claims unsupported by facts or evidence, with instructions, **Granting** Pattison pro se **leave** to amend the **"Merits"** of the Complaint with directions as to curing Extremely Complex legal and factual issues pertaining to "Deliberate Fabrication of evidence", Constitutional violations and "Civil Rico Act enhancement" Causes of Action, he may, in addition to curing deficiencies as to the Merits, cure any Surviving Proceedural technicalities also.

The Courts Process and Proceedural Dismissal, Screening order May be premature or Moot, As once the Court Performs its Mandated Screening on the **"Merits"** identifying Cognizable claims and dismissing any claims that are unsupported by facts, law or evidence, certain claims or defendants may, or may not, require a cure.

2

But until this Honorable Court screens the "**Merits**" of Pattisons Pro Se inmate Action, this will be impossible to determine, and places the Cart before the horse.

The Court Acknowledges, All that is required of Mr. Pattison, pro se, to have the "**Merits**" of his lawsuit Screened, is that he has to state a "Claim".

"to state a claim under 42 USC §1983 a Plaintiff MUST allege (only) two essential elements : **(1)** the violation of a right secured by the Constitution or laws of the United States and **(2)** that the alleged violation was committed by a person acting under color of state law"

I.  QUESTIONS PRESENTED TO THE COURT FOR FINAL DETERMINATION [2]

① DOES PLAINTIFFS PRO SE COMPLAINT, LIBERALLY CONSTRUED STATE A CLAIM UNDER 42 USC. § 1983 ?

② IF PLAINTIFFS DETAILED PRO SE COMPLAINT WELL SUPPORTED by almost 200 pages of evidence STATES A CLAIM UNDER 42 U.SC § 1983, Is THE U.S. DISTRICT COURT MANDATED BY 28 USC §1915, To IDENTIFY ANY COGNIZABLE CLAIMS ON ITS MERITS ?

③ Are "DELIBERATE FABRICATION OF EVIDENCE" AND "CIVIL RICO ACT ENHANCEMENT" CAUSES OF ACTION BOTH LEGALLY AND FACTUALLY COMPLEX ? WARRANTING COUNSEL IN THIS CASE ?

---

[1] Magistrate Judge Denneys assistant, in chambers verified to me over the telephone she had my 263 page complaint and evidence in Magistrate Judges Chambers and that Magistrate Judge Denney aparently was handling the screening of my claim.

[2] Plaintiff incorporates by this refrence all facts law and evidence on file into this brief as if fully stated herein.

**A.** PLAINTIFFS PRO SE COMPLAINT LIBERALLY CONSTRUED STATES A CLAIM UNDER 42 U.S.C § 1983 For Each AND EVERY CAUSE OF ACTION

Your Honor,

I submit to the Court My pro se Complaint liberally construed articulates in great detail the Violation of Rights and/or Privileges secured by the Constitution or laws of the United States on its Merits, as is.

I Also Submit to the Court that the alleged violations were all committed by persons acting under Color of State law, in my complaint, on its Merits as it stands.

I Know the Court Cites one or two sentences in its Order ECF. No 6 taken out of Context, that potentially, could appear vague, out of Context.

However, a Holistic review of each claim, and accompanying evidence in its appropriate Context provides an abundance of factual detail, including the role each Known defendant played, to state a Claim at the pleading stage, and any Hyper technical defects may be cured by subsequent pleadings per FRCP[3] as a Matter of course, and do not warrant Circumvention of Federally Mandated Screening of Plaintiffs Complaint on its merits pursuant to 28 USC § 1915.

I Do NOT, OF Course, Mean to Suggest My Causes of Action are Factually, Legally or Analytically Simple Matters.

To the Contrary they are beyond My comprehension. I am of No Benefit to this Honorable Court, I could only Make things worse, not better. More Confusing, Not less. And welcome Court referral to the Pilot Pro Bono Program (see EXHIBIT A)

---

3  please see the Analysis of <u>Saddozai v. Davis</u> 35 F.4th 705 (9th Cir. 2022) in Section C. below.

**B. THE SCREENING OF PATTISONS PRO SE INFORMA PAUPERUS INMATE COMPLAINT ON ITS MERITS IS MANDATED BY THE PLAIN LANGUAGE OF FEDERAL LAW**

The Courts improper screening of Plaintiffs Complaint Bears an uncanny resemblence to the improper screening of Prison Grievances Pattison alleges in his complaint. Paragraphs #167, #169, #171, #172, #173, #174, #210, #211, #212, #213, #214, #215, #216, #217, #218, #219, etc...

As the Court Knows, SCOTUS and THE NINTH CIRCUIT COURT OF APPEALS, Classifies this species of Government Misconduct as "Chicanery, deception and Fraud."

The Agressive Weaponization of Process and Proceedure to oppress, repress, suppress and otherwise, take undue Advantage of the profoundly disadvantaged, is to be expected from State Prison Officials, but is unbecoming of a Federal Judiciary.

The Plain Statutory language of 28 USC §1915 unambiguously Mandates Courts to "identify any Cognizable Claims" on the Merits "and dismiss any claims that are Frivolous, Malicious, fail to state a Claim upon which relief May be granted" which this court failed to do.

There is No question that if Pattisons, pro se claims, even, errenously hinted of Frivolity, Malice or failed to state a claim, the Court would Dismiss the Claims with Prejudice. The Court would choose to follow Federally Mandated law with lazer like precision.

But the Court did not Dismiss any of my claims as Frivolous, Malicious, or for failure to state a claim upon which relief May be granted - because every single claim is Meritorious and Supported by a boatload of evidence as a matter of law.

Under these Circumstances the Court May not circumvent its Federally Mandated Duties to "identify any (and all) Cognizable claims" on the Merits of Pattisons Complaint. Because doing so would be unjust.

The Courts "Divide, Conquer and Slay" strategy is Not Authorized by Federal Statute or Federal Rules of Proceedure and is frowned upon by SCOTUS.

"Rules of Practice and Proceedure are devised to Promote the ends of Justice, not to defeat them. A rigid and undeviating judicially declared practice" where Courts of review "invariably and under all circumstances decline to Consider all questions" of law or fact which I "specifically urge" would be "out of harmony with this policy. Orderly rules of proceedure do not require sacrifice of the rules of Fundamental Justice"

"In an era of liberality in pleading where trials are no longer esoteric games guarded by archaic rules, Courts MUST ENSURE that Proceedural NICETIES Are NOT USED to deprive a litigant of his day in court"

"If rules of proceedure work as they should in an honest and Fair Judicial system, they Not only permit, but should as nearly as possible guarantee that bonafide complaints be carried to an adjudication on the Merits"

C. THE COURTS FEBRUARY 3, 2023, SCREENING ORDER IS BELIED BY THE Fed. R. Civ. P. AND BINDING CIRCUIT PRECEDENT

The Court Alleges it May simply bypass Mandatory Federal Screening pursuant to 28 USC § 1915.

The Courts screening order at Page 4, employs generalization, deletion and distortion to Misrepresent the facts plead in Pattisons Pro Se inmate complaint Systematically laid out within 30 highly detailed Numbered Paragraphs in claim 2 spanning 5 pages,[4] before rendering its unsupported conclusion "Plaintiffs Complaint violates Rule 8, 'because Plaintiff alleges (only) that 'Defendants' 'deliberately fabricated evidence' in two civil rights lawsuits." see ECF. No. 6:4 ¶ 14-17

The Courts inaccurate assertion is Belied by the Detailed factual Allegations of the Complaint and Contrary to Binding Federal law, The fundamental Rules of Substantive Justice, Liberal Construction Doctrine, and FRCP 1 and 15.

The Courts gross oversimplification of Claim 3, is just as Spurrious as that of Claim 2.

For instance the Court Boils down 4 pages of Detailed Factual Allegations contained within 27 Numbered paragraphs to one single sentence: "that 'NDOC Defendants Made unauthorized disclosures of (his) private Confidential Mental Health Psychiatric records... without first seeking (his) express authorization"[5] and insinuates, his Cause of Action does not identify any one of 50 Named defendants by Name or Job title.

But a Single review of Mr. Pattisons Cause of Action[6] Completely Controverts this Courts unsupported "generalizations, deletions or distortions" and this Honorable Court Commits Clear error, by its infidelity to the Controling law, standards

---

4  ECF. No. 7:23-27

5  ECF. No. 6:4 ¶ 18-25.

6  ECF. No. 7:28-31

and legal doctrines.

The Courts reliance on Misplaced Rules of Procedure and inaplicable caselaw, is equally without Merit and overruled by Binding Federal Precedent, the Fundamental Rules of Substantive Justice, liberal Constuction Doctrine and FRCP 1 and 15

The Ninth Circuit Court of Appeals Recently clarified that "the PLRA Does NoT supplant or Modify Fed.R.Civ.P. 15. Rule 15 Allows Plaintiffs, regardless of their incarceration status, to supplement Pleadings with leave of Court even though the original pleading is Defective in stating a claim... Fed.R.Civ.P. 15(d)" "An inmate Can Cure Deficiencies in his Complaint through later filings" Courts have found that a supplemental Complaint also can defeat an affirmative Defense Applicable to an earlier Complaint." FRCP 15 "Allows prisoners to supplement a Complaint to add facts". see Saddozai v. Davis 35 F.4th 705 (9th Cir 2022).

The Courts legally and Factually unsupported, inconsistent and Contradictory Conclusion to the Contrary, is thus at odds with Controling Ninth Circuit Precedent. Id.

The Courts unsound legal Advice to Pattison[7], betraying this Honorable Courts Desire Not to have to Deal with such a legally and Factually Complex case as Mr. Pattisons, on its Merits, Does Not Justify Dismissal with leave to Amend, — BUT IT DOES WARRANT REFFERAL TO THE COURTS PILOT PRO BONO PROGRAM FOR ASSIGNMENT OF COUNSEL. see **EXHIBIT A**

As the NINTH Circuit has found that "Forcing the Plaintiff to file a Seperate suit regarding his... claims would NOT Further the Policy goals of the PLRA, Because Plaintiff could proceed to file those claims as a Seperate Action." Saddozai v. Davis 35 F.4th 705, (Citing Cano v. Taylor, 739 F3d 1214, 1220-21 (9th Cir 2014). "Such a requirement would promote the precise inefficiency the PLRA was designed to avoid—requiring courts to docket, assign and process two cases where one would do." Id. citing Lira v. Herrera 427 F.3d 1164, 1174 (9th Cir 2005).

Mr. Pattison, hereby, Respectfully Stands on his original Complaint and respectfully Requests the Court to reconsider ECF. NO. 6, In light of the Controling Authority presented.

---

7  ECF. NO. 6:4-6.

D. COURT APPOINTED PRO BONO COUNSEL IS THE ONLY SOLUTION TO MAKE THIS EXTREMELY COMPLEX CASE GO AWAY QUICKLY

i. LIKELIHOOD OF SUCCESS ON THE MERITS

As is, Pattison Standing on his complaint — All claims, undoubtedly will survive being screened on their "Merits" in some shape or form.

The United States District Courts for the District of Nevada, in Accordance with the Ninth Circuit Court of Appeals Consider that this "May itself be sufficient to satisfy the "Merit" analysis on a Motion for Appointment of Counsel" see Reese v. Bryan USDC case# #2:19-CV-512-RFB-BNW, October 25, 2021, Order Granting Plaintiffs Motion for Appointment of Counsel, (EXHIBIT B)

See Also Marshall v. State of Nevada, et al, USDC case #2:21-CV-726-JAD-BNW, October 29, 2021, Order Granting Plaintiffs Motion for Appointment of Counsel EXHIBIT C (Plaintiffs "Complaint Survived the Screening Process" even though Judge Dorsey ruled adequate pleadings were insufficient to determine liklihood of Success "the Ninth Circuit 'has indicated that the articulation of a Cognizable claim for relief may itself be sufficient to satisfy the 'Merit' Analysis on a motion for Appointment of Counsel" citing Turner v. Riaz 2018 U.S. DIST. LEXIS 194391 (E.D. Cal. Nov. 14, 2018) (citing Jilei v. McGuinness 642 F. App'x 719, 722 (9th Cir. 2016))

see Also Kern v. Johnson USDC Case# 2:21-CV-467-KJD-BNW, July 11, 2022, Order GRANTING Plaintiffs Motion for Appointment of Counsel EXHIBIT D

see Also Welch v. Minev, et. al. USDC case# 2:19-CV-1064-GMN-BNW, August 9, 2021, Order Granting Plaintiffs

<u>Motion for Appointment of Counsel</u> ("Plaintiffs" claim Survived the Courts Screening." "Therefore <u>Plaintiff has shown some liklihood of Success on the Merits</u>") see *EXHIBIT-E* " "

## ii. <u>COMPLEXITY OF THE LEGAL AND FACTUAL ISSUES</u>

As is, Pattison Standing on his Complaint, the Court without question Must Find Pattisons "<u>Deliberate Fabrication of Evidence</u>" and "<u>Civil RICO ACT enhancement</u>" Claims to be "<u>inherently Complex</u>" <u>Both</u> "Factually" AND "LEGALLY."

United States District Courts for the District of Nevada, in Accordance with the Ninth Circuit Court of Appeals Find "exceptional Circumstances" to exist requiring the Appointment of Pro Bono Counsel where the claims are EITHER Factually OR Legally Complex. see <u>Reese v. Bryan Id</u>; also <u>Marshall v. State of Nevada, et.al., Id</u>; also <u>Kern v. Johnson Ed</u>; also <u>Welch v. Minev, et.al., Id</u>;

see Also "<u>Owens v. Dzurenda</u>" USDC case # 2:19-CV-126-RFB-BNW, November 8, 2021, <u>Order Granting Plaintiffs Motion for Appointment of Counsel</u> see *EXHIBIT F* stating "A Court May Find that 'exceptional circumstances' exist if a Claim is EITHER Factually OR Legally <u>COMPLEX</u>" Citing <u>McElyea v. Babbitt 833 F2d 196, 200 n.3 (9th Cir. 1987)</u>.

Dear Your Honor,

I recieved General Order 2019-07 and General Order 2022-04 from the Court Clerk please

See EXHIBIT A

The Courts General order 2019-07 states "Attorneys admitted to practice in this District have a strong tradition of Providing pro bono representation to indigent litigants in Civil cases in the Courts of the state of Nevada" like me.

Please refer my case to the Pilot Pro Bono Program because this case is too COMPLEX for My limited understanding abilities and Im unable to understand the law surrounding Deliberate Fabrication of evidence Doctrine, Civil RICO ACT Doctrine, Judicial Deception Doctrine, fraud on the Court Doctrine, Attorney Crime/Fraud Doctrine, Privilege Doctrine, etc...

Further, No NDOC Prison law library has an actual "real" law library Containing educational Materials to learn above doctrines free of Charge like the Pro se litigants in Society have unlimited access to, plus internet, unlimited telephone use, etc..

There is No way possible for me to properly investigate My case, I have No way to pay a Court reporter Service to assist me in taking depositions of Defendants, and even if Depositions could be conducted free of charge, I dont Know how one goes about doing so, pro se, from prison.

The Jail House lawyers I rely on to prepare all My litigation and court filings are just as clueless as I am. I used all my E.I.P. Stimulos funds mostly to Pay Debts I owed to NDOC and the USDC, I have No friends, Family or resources to hire a lawyer or buy paper or pens or to hire expert witnesses, Computer forensic Analyst Specializing in Computer Crime/fraud.

11

These handicaps are Made all the More dificult by My incarceration as I am Not allowed access to internet or phone to interview and locate favorable witnesses, I dont know how to make Defendants bear the Costs of Discovery.

As Such Counsel would be Much better suited, to prosecute this Complex of a Case, THan I could. In deed if the Court is NoT willing to provide Counsel for all purposes, please appoint Me professional Counsel simply to Amend My complaint and assist me with expert discovery, depositions and Objective Assessment of the Merits of My Case.

If appointed Counsels expert opinion is that My case is without Factual or legal Merits upon Completion of Discovery, I unconditionally stipulate to dismiss all claims and defendants with Prejudice.

### iii. UNITED STATES DISTRICT COURTS IN NEVADA APPOINT PRO BONO COUNSEL LIBERALLY

US District Courts for this District Appoint pro bono counsel to pro se litigants who have unlimited Access to telephone, internet and the U.S. District Courts Public Law Library — even if they "fail to timely" File a "Motion for Appointment of Counsel", or Fail to "provide Supporting documents to establish that (Plaintiff) has exhausted her administrative remedies" and likewise failed to establish the lawsuit "was commenced within 60 days after notice of a final decision by the Commissioner." see **EXHIBIT G** (Belle v. Saul USDC#2:19-CV-77-JAD-EJY, March 5, 2020, Order Appointing Counsel).

Similarly, U.S District Courts in Nevada refer cases "to the Pilot pro bono Program to see if there is an attorney willing to be appointed as

12

Plaintiffs "Counsel" "as a Courtesy to" Plaintiff, even when Plaintiff "failed to show exceptional circumstances warranting appointed Counsel" and Plaintiff "has demonstrated an ability to articulate her claims" and "the legal issues are not complex". see **EXHIBIT H** (McQueen v. NYE County Sheriffs Office, etal., USDC #2:15-CV-905-APG-VCF, August 10, 2015, Order Referring Case to the Pro Bono Program).

Dear Your Honor,

the Legal Aid Center of Southern Nevada found me a Fantastic Pro Bono Attorney Nicole Scott esq, with Past Court referral.

I recently spoke with Barbra Buckleys Assistant "Liz" and she told me she'd be happy to find me a pro Bono Attorney in Nevada willing to take my case, "It's easy" with a Court referal, she said to file a Motion with the Court and she and LACSN will be happy to find another great Nevada lawyer for me on this case.

## CONCLUSION

Plaintiff thanks the Honorable Court for Granting all the Relief herein, requested, and/or alternatively entering final order from which appeal may be taken

Mr. Pattison thanks the Court for ordering so,

(Respectfully Submitted)

dated 2/19/23                    Dante Pattison #88986
                                 NNCC.

13

I Dante H. Pattison hereby swear under penalty of perjury the foregoing is true and correct to the best of My Knowledge and abilitys.

dated this 19th day of February, 2023.

Signed,

Dante Pattison
Plaintiff
Bar# Pro Se
NDOC #88986
NNCC
Po Box 7000
Carson City, Nv. 89702

(Conclusion)





```
X FILED                          RECEIVED
  ENTERED                        SERVED ON
              COUNSEL/PARTIES OF RECORD

            OCTOBER 19, 2021

              CLERK US DISTRICT COURT
               DISTRICT OF NEVADA
BY:                              DEPUTY
```

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\*\*\*

IN THE MATTER OF:

PRO BONO PROGRAM

**SECOND AMENDED GENERAL ORDER 2019-07**

WHEREAS, attorneys admitted to practice in this District have a strong tradition of providing *pro bono* representation to indigent litigants in civil cases in the courts of the State of Nevada;

WHEREAS, the Federal Bar Association, William S. Boyd School of Law, Legal Aid Center of Southern Nevada, Nevada Legal Services, and Washoe Legal Services are willing to support and coordinate providing qualified volunteer lawyers to represent indigent *pro se* litigants in this District;

WHEREAS, volunteer lawyers provide an extremely valuable service, which enhances our legal system;

WHEREAS, volunteer lawyers who provide their time and resources to preserve access to justice for those unable to afford a lawyer greatly assist this Court in the performance of its mission;

WHEREAS, the Judges of this District have authorized the implementation of the attached Program for the Representation of *Pro Se* Litigants;

IT IS THEREFORE ORDERED that the *Pro Bono* Program for the Representation of *Pro Se* Litigants in the United States District Court for the District of Nevada, attached hereto, is adopted.

1    IT IS FURTHER ORDERED that the Court's *Pro Bono* Committee is directed to maintain

2  statistics measuring program activity and submit annual reports to the Judges of this District.

3    DATED this 18th Day of October 2021.

4

5
_____

6  MIRANDA M. DU, CHIEF JUDGE
UNITED STATES DISTRICT COURT

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

### *PRO BONO* PROGRAM FOR THE REPRESENTATION OF *PRO SE* LITIGANTS IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEVADA

The United States District Court for the District of Nevada ("Court") adopts the following *Pro Bono* Program ("Program") for furnishing representation to *pro se* litigants in matters where the Court exercises its discretion to provide such representation. *See* 42 U.S.C. § 2000e, *et seq.* and 28 U.S.C. § 1915. This Program shall govern the appointment of attorneys to represent *pro se* litigants. For each civil action commenced by such litigant, any District Judge or Magistrate Judge to whom the action is assigned may issue an order of appointment and other orders relating to representation by the appointed attorney in accordance with this Program. The Court, through a *Pro Bono* Committee and designated *Pro Bono Liaison*, will work in conjunction with the Legal Aid Center of Southern Nevada, Washoe Legal Services, Nevada Legal Services, and the Federal Bar Association of the District of Nevada to administer the Program. The designated *Pro Bono Liaison* ("Liaison") for the District of Nevada is:

Mai Tieu
Pro Bono Liaison
333 Las Vegas Boulevard South, Suite 3005
Las Vegas, Nevada 89101
702.464.5540

Volunteer lawyers provide an extremely valuable service, which enhances our legal system. *Pro bono* representation can be a rewarding and enlightening experience. The Court is grateful to the volunteer lawyers who provide their time and resources to preserve access to justice for those unable to afford an attorney.

### SECTION 1. APPOINTMENT

**(a) Referral to the Program.**

(1) Timing. At any time during the course of litigation, an assigned Judge may refer the case to the Program for the appointment of *pro bono* counsel. Referral to the Program is

not an endorsement of the merits of the case. Whether to refer a case for appointment is discretionary and generally based on a number of factors, including but not limited to:

A.    the inability of the *pro se* party to retain counsel by other means;

B.    the potential merit of the claims as set forth in the pleadings;

C.    the nature and complexity of the action, both factual and legal, including the need for factual investigation, the need for expert/s, and the overall needs of discovery;

D.    the presence of conflicting testimony calling for a lawyer's presentation of evidence and cross-examination;

E.    whether the *pro se* party has another case pending before the Court and, if so, whether counsel has been appointed in such case;

F.    the capability of the *pro se* party to present the case;

G.    the degree to which the interests of justice will be served by appointment of counsel, including the benefit the Court may derive from the assistance of appointed counsel;

H.    whether reasonable costs and attorney's fees may be recoverable by the prevailing party in the action;

I.    the degree to which it appears an early ADR procedure, such as a settlement conference or early neutral evaluation under Local Rule 16, may bring about an early, inexpensive and consensual resolution of the litigation by:

(i) facilitating or improving communications between the parties;

(ii) providing the parties an opportunity to be heard regarding their respective grievances, positions, concerns, goals and interests;

(iii) promoting the parties' understanding of the strengths and weaknesses of their respective cases;

(iv) limiting, narrowing or simplifying the issues in dispute;

(v) restoring or preserving personal or business relations;

(vi) otherwise creating an atmosphere conducive to settlement;

4

          (vii) achieving settlement on terms not available through litigation; or

          (viii) achieving settlement of some or all issues as between some or all

parties; and

J.    any other factors deemed appropriate by the referring Judge.

(2) Scope of Appointment. Cases may be referred to the Program for either general purpose or limited purpose representation. Limited purpose representation will normally, though not necessarily, correlate to representation for purposes of participating in an Alternative Dispute Resolution proceeding under Local Rule 16, including early mediation conferences in Section 1983 prisoner litigation.

**(b) Appointment.** Upon referral by a Judge to the Program, the case will be sent to the *Pro Bono* Liaison. The Liaison will gather pertinent materials, including copies of all necessary filings in the case, and forward them to Legal Aid Center of Southern Nevada or Washoe Legal Services who, in turn, will screen the litigant for financial eligibility and will attempt to locate counsel willing to take on the pro bono representation.

**(c) Appointment Response Form.** Within thirty (30) days after pro bono counsel accepts an appointment, counsel shall complete and return to the Liaison the *Pro Bono* Response Form, indicating: "Representation of [*pro se* litigant's name] for [type of appointment (*i.e.* "the limited purpose of" or "All Purposes")] is accepted." *Pro bono* counsel shall also indicate that he/she has conferred with the litigant and that the litigant agrees to the representation. Should a *pro se* litigant determine not to accept representation by pro bono counsel, the Response Form shall so indicate. The decision by a *pro se* litigant not to participate in the Program may preclude further participation in the Program on the specific case for which representation was refused. It does not preclude the possibility of future participation in the Program in a different case.

5

**(d) Order of Appointment.** Upon receipt of the Appointment Response Form, the Liaison will forward the form along with a proposed order appointing pro bono counsel to the referring Judge. Absent unusual circumstances, pro bono counsel is expected to remain as counsel for the duration of the purpose of the appointment. Docketing of the order appointing *pro bono* counsel shall result in the setting of a public PROBONO case flag. Appointment under this Program does not extend to the appeal, if any, of a final decision, which shall be the responsibility of the client.

**(e) Notice of Completion of Pro Bono Appointment.** The Notice of Completion Form is critical to the Program's success, the accuracy of case records, and the quality of service to *pro se* litigants. The Form shall be submitted within fourteen (14) days after completion of legal services rendered by *pro bono* counsel to the Liaison.

**(f) Record of Attorney Appointments.** The Liaison, in conjunction with Legal Aid Center of Southern Nevada and Washoe Legal Services, will maintain a record of appointments and provide an annual written report to the *Pro Bono* Committee and Chief District Judge.

**(g) Waiver of CM/ECF Fees.** Attorneys who have taken on the *pro bono* representation shall not be charged fees for use of the Court's electronic filing system (PACER) in the case on which they are serving as *pro bono* counsel.

**(h) Liability Insurance.** Participating attorneys will be eligible for professional errors and omissions insurance coverage provided by Legal Aid Center of Southern Nevada or Washoe Legal Services, to the extent such coverage is available.

**(i) Business Entities Not Eligible.** Business entities are not eligible for participation in the Program.

**(j) Pro Hac Vice.** Attorneys who file for *pro hac vice* status will not be charged the petition filing fee in a case where they are serving as *pro bono* counsel.

## SECTION 2. EXPENSES

**(a) Reimbursement of Reasonable Expenses.** An attorney assigned pursuant to the Program to represent a party in a proceeding before this Court may apply for reimbursement from the Court Fund of reasonable, eligible expenses not paid by the party. Before seeking reimbursement of costs, pro bono counsel must seek payment from the party to the extent feasible. The "Court Fund" consists of an annual allowance made by the District of Nevada's Attorney Admission Fund to the Pro Bono Committee to use in the Committee's discretion for reimbursement of eligible costs on a pro rata basis.

**(b) Advancement of Expenses.** The assigned attorney or firm may, but is not required to, advance the payment of expenses. Assigned counsel or the firm with which counsel is affiliated may advance part or all of the payment of any such expenses without requiring that the counsel or firm remain ultimately liable for such expenses. In appropriate circumstances, the Pro Bono Committee may approve an advance of costs requested by pro bono counsel.

**(c) Expenses Eligible for Reimbursement from the Court Fund.**

1. Deposition and Transcript Costs. Except as otherwise ordered by the Court, the cost of the original of any transcript or deposition together with the cost of one copy each where needed by counsel and, for deposition, the copy provided to the Court shall be eligible for reimbursement.

2. <u>Travel Expenses.</u> Reasonable costs of travel, of more than 50 but less than 200 miles, by privately owned automobile are eligible for reimbursement at the rate currently prescribed for federal judiciary employees who use a private automobile for conduct of official business ("Reimbursed Vehicle Rate"), plus parking fees, tolls, and similar expenses, provided, however, that if the cost of a vehicle rental plus fuel ("Rental Vehicle Rate") is less expensive than the Reimbursed Vehicle Rate, reimbursement shall be capped at the Rental Vehicle Rate, plus parking fees, tolls, and similar expenses. Reasonable costs for transportation other than by privately owned automobile may be claimed on an actual expense basis. Actual expenses reasonably incurred shall be guided by the prevailing limitations placed upon travel and subsistence expenses of federal judiciary employees in accordance with existing government travel regulations.

3. <u>Service of Papers; Witness Fees.</u> Fees for service of papers and the appearances of witnesses that are not otherwise avoided, waived, or recoverable are eligible for reimbursement.

4. <u>Interpreter Services.</u> Reasonable costs of interpreter services not otherwise avoided, waived, or recoverable are eligible for reimbursement. The fees/rates are subject to a reasonableness standard and may not exceed the hourly rate established by the Criminal Justice Act.

5. <u>Experts.</u> Reasonable costs for expert services, other than interpreters, not otherwise avoided, waived, or recoverable, are eligible for reimbursement.

6. <u>Expenses Ineligible for Reimbursement from the Court Fund.</u> General office expenses, including personnel costs, rent, telephone services, secretarial help, and photocopying, are not reimbursable from the Court Fund. Any costs incurred in conducting computer assisted legal research is not reimbursable from the Court Fund. The expense of printing briefs, regardless of the printing method utilized, is not reimbursable from the Court Fund.

8

1  ///

2  ///

3      **(d) Limits for Reimbursements.**

4          1.  <u>Types of Actions.</u> Only those expenses associated with the preparation of a civil

5              action in the U.S. District Court for the District of Nevada shall be eligible for

6              reimbursement. For clarity, costs associated with the preparation or presentation

7              of an appeal to the U.S. Court of Appeals or the U.S. Supreme Court shall not be

8              reimbursed from the District Court Fund. Reimbursement from the Court Fund may

9              be limited by funds available.

10         2.  <u>Dollar Limits.</u> To the extent the represented party is unable to bear all or part of the

11             costs of litigation, advances plus reimbursements are limited to $7,500 in

12             aggregate.

13

14     **(e) Procedures for Obtaining Reimbursement or Advance.**

15         1.  <u>Reimbursement.</u> A request for reimbursement must be made by application to the

16             Pro Bono Committee for reasonable expenses not paid by the litigant. All requests

17             must be submitted through the Liaison. Requests may be made at any time after

18             the expense has been paid and during the pendency of the proceedings and up to

19             thirty days following the entry of judgment in the proceedings. The request shall

20             set forth the reason for the request and the amount of the expense, as well as any

21             expenses that have already been advanced and/or reimbursed in the action on

22             behalf of the party. The Committee may condition approval of such requests

23             subject to the availability of funds at the time of the request.

24         2.  <u>Advance.</u> A request for an advance disbursement to cover an expense must be

25             made by application to the Pro Bono Committee. All requests for preapproval and

26             advancement must be submitted through the Liaison. The request shall set forth

27             the reason for the request and the estimated amount of the expense, as well as

9

any expenses that have already been advanced and/or reimbursed in the action on behalf of the party. The Committee may condition approval of such requests subject to the availability of funds at the time of the request.

3. <u>Format.</u> Any request made under this Section 2 may be made ex parte, and shall include the voucher form approved by the Committee and available on the Court's website. The request shall be accompanied by sufficient documentation to permit a determination that the request is appropriate and reasonable, and if the expense has already been paid.

**(f) Repayment to the Court Fund.** To the extent a party assigned counsel under the Program obtains a monetary award through settlement, final judgment, or an award of taxable costs or attorney fees; the party shall reimburse the Court Fund as follows:

1. <u>Repayment Limits in case of Settlement or Judgment.</u> If a party settles or obtains a judgment in excess of the party's previous reimbursement from the Court Fund, full repayment to the Court Fund is required. If a party settles or obtains judgment in an amount that is less than the previously approved reimbursement, the Court Fund shall be repaid at a rate of 50 cents on the dollar in an amount not to exceed fifty percent (50%) of the total settlement or judgment.

2. <u>Amounts to be Repaid from Cost or Attorney Fee Award.</u> Where a party prevails and is awarded taxable costs or attorney fees, the Court Fund shall be repaid in full, first from the cost award and then from the attorney fees award, not to exceed the total amount of the awards.

**(g) Extraordinary Expenses.** If pro bono counsel has incurred expenses of an extraordinary nature, and after exhausting the maximum amount reimbursable from the Court Fund as set forth in paragraph 2(d)(1) above, counsel may apply to the Attorney

Admission Fund of the District of Nevada for additional reimbursement. Any such application by counsel must:

1. demonstrate that the expenses are extraordinary and not an expense typically incurred by counsel in the handling of a pro bono assignment, such as those costs identified in Section 2(c), or if the expense is of a type listed in Section 2(c), that the amount in excess of $7,500 was essential to effective representation of the pro bono client;

2. be accompanied by the presiding judge's determination that the extraordinary costs for which pro bono counsel seeks reimbursement were reasonable and necessary; and,

3. provide documentation by pro bono counsel that the client represented is unable to reimburse pro bono counsel for the extraordinary expenses for which reimbursement is sought.

The AAF Committee will then make a recommendation as to whether to grant the pro bono counsel's application for reimbursement of extraordinary costs, which will be placed on the agenda of the next quarterly judges' meeting.

**SECTION 3. COMPENSATION FOR SERVICES**

**(a)** Upon appropriate application, the Judge may award attorney fees against an opposing party for services rendered in the action as authorized under applicable statutes, regulations, rules, or other provisions of law, and as the Judge deems just and proper considering the applicable legal standards.

**(b)** If, after appointment, the appointed attorney discovers the party, due to changed circumstances, is no longer financially eligible as originally determined pursuant to Section 1(b), the attorney shall bring this information to the attention of the assigned Judge, who may thereupon (i) approve a fee arrangement, including a contingency

11

fee arrangement, between the party and the appointed attorney, or (ii) relieve the attorney from the responsibilities of the order of appointment and permit the party to retain an attorney or proceed *pro se*.

(c) Nothing in these rules shall preclude or limit appointed counsel and the *pro se* litigant from entering into a contingency fee agreement, subject to any legal and ethical obligations, at the outset of the appointment. Except as provided in subsection (b) of this section, any such agreement shall be made within the time frame for submitting the Appointment Response Form, which shall indicate that a contingency fee agreement is in place. In the case of a contingency agreement or other arrangement made under this subsection or subsection (b), appointed *pro bono* counsel is not eligible for advancement or reimbursement of costs or expenses from the Court Fund.



```
                                    ____ FILED          ____ RECEIVED
                                    ____ ENTERED        ____ SERVED ON
                                              COUNSEL/PARTIES OF RECORD

                                       JUL 1 8 2022

                                    CLERK US DISTRICT COURT
                                       DISTRICT OF NEVADA
                                    BY: _____ DEPUTY
```

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| *IN RE*: APPOINTMENT OF LAWYER REPRESENTATIVES FOR THE DISTRICT OF NEVADA | **GENERAL ORDER 2022-04** |

It is hereby ordered that the following attorneys are appointed to serve as Lawyer Representatives for the United States District Court for the District of Nevada:

Leslie Nino Piro      Term Effective September 1, 2022, and Expiring August 31, 2025

Adam Hosmer-Henner      Term Effective September 1, 2022, and Expiring August 31, 2025

To stagger the expiration date of future Lawyer Representatives' terms, Richard Tanasi agreed to extend his term from August 31, 2023, to August 31, 2024, and Jonathan J. Tew agreed to extend his term from August 31, 2023, to August 31, 2025.

The following attorneys were previously appointed and will continue to serve their existing term as Lawyer Representatives:

James Kemp      Term Expires August 31, 2022

Michael Large      Term Expires August 31, 2022

Holly Parker      Term Expires August 31, 2023

Amanda Perach      Term Expires August 31, 2023

Travis Barrick      Term Expires August 31, 2023

Lindsay Liddell      Term Expires August 31, 2024

///

Lindsay Ager                Term Expires August 31, 2024

DATED THIS 15th Day of July 2022.

MIRANDA M. DU, CHIEF JUDGE
U.S.D.C. FOR THE DISTRICT OF NEVADA

2

EXHIBIT

B

**James M. Reese, Plaintiff, v. Gregory Bryan, et al., Defendants.**
**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEVADA**
**2021 U.S. Dist. LEXIS 204998**
**Case No. 2:19-cv-00512-RFB-BNW**
**October 25, 2021, Decided**
**October 25, 2021, Filed**

**Editorial Information: Subsequent History**

Motion denied by, Sanctions disallowed by Reese v. Bryan, 2022 U.S. Dist. LEXIS 80404 (D. Nev., Apr. 27, 2022)

**Counsel**          {2021 U.S. Dist. LEXIS 1}For James M. Reese, Plaintiff: Leo S Wolpert, Las Vegas, NV; Margaret A McLetchie, McLetchie Law, Las Vegas, NV.
                     For Gregory Bryan, Romeo Aranas, Defendants: Katlyn Brady, Nevada Office of the Attorney General, Las Vegas, NV.

**Judges:** BRENDA WEKSLER, UNITED STATES MAGISTRATE JUDGE.

                         Opinion

**Opinion by:**       BRENDA WEKSLER

                         Opinion

**ORDER re ECF No. 37**

Presently before the Court is *pro se* 1 Plaintiff James M. Reese's motion for appointment of counsel (ECF No. 37), filed on September 13, 2021, for which he requested a hearing. Defendants filed an opposition (ECF No. 42) on September 27, 2021. Plaintiff replied on October 5, 2021. ECF No. 43. The Court held a hearing on October 20, 2021, where all parties were present.

**I. Background**

Mr. Reese's complaint alleges violations of the Eighth Amendment. ECF No. 1 at 1. As his complaint indicates, "Defendants-doctors and administrators at High Desert State Prison-violated Mr. Reese's rights through deliberate indifference to his serious medical needs." *Id.* at 1-2. More specifically, Mr. Reese alleges that Defendants failed to provide him with any "one of the many commercially available drugs" to cure his Hepatitis C despite knowing that not doing so would cause serious risk to his health. *Id.* at 2. And as a{2021 U.S. Dist. LEXIS 2} result of not receiving proper2 treatment, Mr. Reese alleges that his Hepatitis C evolved into chronic Hepatitis C that resulted in "irreversible liver damage with incurable cirrhosis[.]" *Id.* at 4, 11. Of note, Mr. Reese alleges that he contracted the infection in the late 1990s while in Nevada Department of Corrections custody.3 *Id.* at 3.

Mr. Reese now requests a court-appointed attorney, arguing that he lacks the following: (1) access to investigate "all crucial facts" as he is detained at High Desert State Prison, (2) access to the law library

1yicases                                        1

© 2022 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

and legal supplies, (3) medical expertise to depose expert witnesses and obtain medical reports, and (4) access to discovery obtained by his prior counsel.4 ECF No. 37 at 2-4, 6, 12, 14. Mr. Reese further argues that his medical conditions, including sleeplessness and concentration problems, prevent him from competently representing himself in this complex matter. *Id.* at 6-7. Mr. Reese explains that his case is complex because of the legal and medical issues and the conflicting testimony involved. *Id.* at 8, 11, 14. He also adds that he needs counsel because he requested a jury trial and will be a witness. *Id.* at 5. Finally, Mr. Reese argues that **{2021 U.S. Dist. LEXIS 3}** because his medical records establish damage to his liver from not receiving proper treatment for his Hepatitis C infection, he has a "very high chance of success" if he is appointed counsel. *Id.* at 7, 16.

Defendants oppose Mr. Reese's request. They argue that he cannot succeed on the merits because his former attorney stated in a letter to Mr. Reese that, because the complaint alleged he has cirrhosis, but an expert witness opined he does not, "our ethical obligations dictate that we cannot allow this representation to stand." ECF No. 42 at 1. In line, Defendants repeatedly argue that given Mr. Reese's prior counsel's representation, any appointed attorney would suffer from the same ethical constraints. *Id.* at 1-4. Finally, Defendants argue that Plaintiff has not shown that exceptional circumstances exist, reasoning that the claims in this case are not "unduly complex[,]" Mr. Reese has shown a "strong ability to articulate his claims," he has access to legal materials, and he is "in the same position as every litigant proceeding *pro se*." *Id.* at 2-3.

In his reply, Mr. Reese argues that his medical records, which he attached as exhibits to his motion for appointment of counsel, prove **{2021 U.S. Dist. LEXIS 4}** "without any doubt" his deliberate indifference claim. ECF No. 43 at 1-2, 5. He also repeats his argument that his medical records refute the opinion held by the expert witness retained by his former attorney. *Id.* at 3. Mr. Reese notes that he has not received "any post Hep[atitis]-C testing or treatment for liver damage related problems[,]" including abdominal cramping, vomiting, diarrhea, and sleeplessness. *Id.* at 2. Finally, he repeats his arguments raised in his motion, including, for example, claiming that he requires counsel because of his inability to access legal materials and due to the complexity of the case. *Id.* at 3-4.

## II. Discussion

Civil litigants do not have a Sixth Amendment right to appointed counsel. *Storseth v. Spellman*, 654 F.2d 1349, 1353 (9th Cir. 1981). In limited circumstances, federal courts are empowered to request an attorney to represent an indigent civil litigant. For example, courts have discretion, under 28 U.S.C. § 1915(e)(1), to "request" that an attorney represent indigent civil litigants upon a showing of "exceptional circumstances." *Agyeman v. Corrections Corp. of Am.*, 390 F.3d 1101, 1103 (9th Cir. 2004).

To determine whether the "exceptional circumstances" necessary for appointment of counsel are present, the court evaluates (1) the likelihood of plaintiff's success on the merits, and (2) the plaintiff's ability **{2021 U.S. Dist. LEXIS 5}** to articulate his claim *pro se* "in light of the complexity of the legal issues involved." *Agyeman*, 390 F.3d at 1103 (quoting *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986)). A court may find that "exceptional circumstances" exist if a claim is either factually or legally complex. *See, e.g., McElyea v. Babbitt*, 833 F.2d 196, 200 n.3 (9th Cir. 1987) (per curiam) (suggesting that a plaintiff's claim concerning the provision of religious books in prison raises "complicated constitutional issues").

Neither of these factors is dispositive and both must be viewed together. *Wilborn*, 789 F.2d at 1331. It is within the court's discretion whether to request that an attorney represent an indigent civil litigant under 28 U.S.C. § 1915(e)(1). *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009).

### A. Whether Mr. Reese's claims have a likelihood of success on the merits

© 2022 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Here, Mr. Reese's claims have a likelihood of success on the merits.

In his motion for appointment of counsel, Mr. Reese included a letter written to him by his former attorney. ECF No. 37 at 37-38. In this letter, Mr. Reese's prior attorney claims that Mr. Reese must voluntarily withdraw the complaint, or she will be forced to withdraw as counsel. *Id.* at 37. She explained that these options are necessary because a medical doctor whom she had retained as an expert witness-Dr. Robert Gish-was given "a copy of [Mr. Reese's] medical records" and opined that Mr.**{2021 U.S. Dist. LEXIS 6}** Reese does not suffer from cirrhosis and, therefore, any delay in medical treatment for Mr. Reese's Hepatitis C could not have caused "significant long term damage" to his liver. *Id.*

But Dr. Gish's opinion is, at best, a medical opinion that contradicts the findings of Mr. Reese's treating physician Dr. Uday Saraiya, MD, who, as noted in the complaint and medical records attached to Mr. Reese's instant motion, found that Mr. Reese "has cirrhosis of the liver." ECF No. 1 at 10 ("In his report, Dr. Saraiya noted that Mr. Reese had cirrhosis of the liver."), ECF No. 37 at 20 (progress note dated March 7, 2018 where Dr. Saraiya writes that Mr. Reese "will be started on Mavyret as above for 12 weeks as he has cirrhosis of the liver"). Dr. Gish's opinion also appears to contradict a medical report where, on April 2, 2021⁸, a medical provider5 opines that Mr. Reese has Fibrosis State 4, which indicates "early cirrhosis[.]" ECF No. 37 at 30. Therefore, based on the record before the Court, the opinion of Dr. Gish, who does not appear to have ever treated or examined Mr. Reese, does not invalidate the findings provided by Mr. Reese's treating physician, Dr. Saraiya. And Dr. Saraiya's findings,**{2021 U.S. Dist. LEXIS 7}** at least through the progress notes, appear to support both the objective and subjective prongs of a deliberate indifference claim.

Additionally, it is unclear to the Court (and the parties) whether Dr. Gish's opinion relied on all of Mr. Reese's (correct) medical records. As Mr. Reese argued at the hearing, there is no affidavit or declaration from Dr. Gish attesting that he believes that Mr. Reese does or did not have cirrhosis. There also is no report authored by Dr. Gish for the Court (or the parties) to consider. Rather, there is only a statement made by Mr. Reese's former attorney representing Dr. Gish's alleged opinion.

In sum, assuming that Dr. Gish did, in fact, review all of Mr. Reese's medical records, confirmed that they were correct, and concluded that Mr. Reese did not have cirrhosis, there may be a dispute as to a medical opinion. But even so, such a dispute is common, particularly in a deliberate indifference claim such as this one. And contrary to Defendants' argument, this dispute in medical opinions does not, on its face and given the record before the Court, indicate an ethical dilemma for an attorney who would represent Mr. Reese, or deem this case, as Defendants**{2021 U.S. Dist. LEXIS 8}** argue, "a meritless matter." *See* ECF No. 42 at 3.

Accordingly, Mr. Reese has presented a plausible Eighth Amendment claim. *See Turner v. Riaz*, No. 216CV0969MCEACP, 2018 U.S. Dist. LEXIS 194391, 2018 WL 5962726, at *4 (E.D. Cal. Nov. 14, 2018) ("The Ninth Circuit has indicated that the articulation of a cognizable claim for relief may itself be sufficient to satisfy the "merit" analysis on a motion for appointment of counsel.").

**B. Whether Mr. Reese has an ability to articulate his claim *pro se* "in light of the complexity of the legal issues involved**

The parties dispute whether Mr. Reese can articulate his claims *pro se* "in light of the complexity of the legal issues involved." *See* ECF No. 37 at 2-4, ECF No. 42 at 2-3. While Defendants argue that the "substantive claims involved in this are not unduly complex[,]" the Court disagrees. *Id.* at 3.

In an unpublished decision, the Ninth Circuit held that a plaintiff should be appointed counsel for a deliberate indifference claim stemming from allegations that prison supervisors and physicians failed

© 2022 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

to properly treat the plaintiff's "'chronic and substantial pain' resulting from spine degeneration[.]" *Tilei v. McGuinness*, 642 F. App'x 719, 722 (9th Cir. 2016). The Ninth Circuit reasoned that the plaintiff's "claim will turn on complex medical questions of competing treatment regimens and causation, and likely require the testimony{2021 U.S. Dist. LEXIS 9} of expert witnesses." *Id.* In another unpublished decision, the Ninth Circuit ordered appointment of counsel in a case also involving a deliberate indifference claim, holding that the claim involved "complex" medical issues relating to the defendants' alleged failure to treat plaintiff's tuberculosis. *Tai Huynh v. Callison*, 700 F. App'x 637, 638 (9th Cir. 2017). The *Tai Huynh* court reasoned that "the record demonstrates that [plaintiff] has little ability to articulate his claims without the benefit of counsel to properly challenge Defendants' expert." *Id.* (citation omitted). Furthermore, other district courts have also found that such deliberate indifference claims are complex. *See, e.g., Turner v. Riaz*, No. 216CV0969MCEACP, 2018 U.S. Dist. LEXIS 194391, 2018 WL 5962726, at *4 (E.D. Cal. Nov. 14, 2018) ("Appointment of counsel is also appropriate because deliberate indifference claims involve an interplay of factual and legal issues that is inherently complex."); *Cataldo v. Madox*, No. 16-CV-2747-JAH-WVG, 2017 U.S. Dist. LEXIS 98521, 2017 WL 2733924, at *2 (S.D. Cal. June 26, 2017) ("Plaintiff's claims of deliberate indifference to medical needs and failure to protect based on medical status will turn on standards of care, causation, and medical treatment issues that may require the testimony of expert witnesses, necessitating expert discovery, a task that is undoubtedly complex."); *cf. Hernandez v. Aranas*, No. 218CV00102JADBNW, 2020 U.S. Dist. LEXIS 18548, 2020 WL 569347, at *6 (D. Nev. Feb. 4, 2020) (holding that the plaintiff's deliberate indifference claim{2021 U.S. Dist. LEXIS 10} relating to eye treatment is "relatively straightforward" and "despite [the plaintiff's] medical issues and language barrier, [the plaintiff] has sufficiently demonstrated his ability to articulate his position").

Here, as Dr. Gish's letter reveals, Mr. Reese requires not only an expert witness to establish causation, but he also needs the ability to properly challenge his former attorney's own expert as well as Defendants' expert(s). Additionally, while Defendants argue that Plaintiff "has reflected in his filings that he possesses a strong ability to articulate his claims[,]" the Court cannot agree. This is so because the complaint in this case was prepared by an attorney, and there has not been much litigation in this case, making it difficult to judge Mr. Reese's ability to articulate his claims. In addition, Mr. Reese conceded at the hearing that the medical issues in this case were "above [his] head." He also noted in his motion and at the hearing that he has various medical ailments, including difficulties with concentration, sleeplessness, and pain, that would preclude him from litigating this case. *See, e.g.*, ECF No. 37 at 6-7. Such conditions are not conditions that *any* litigant{2021 U.S. Dist. LEXIS 11} in Mr. Reese's position would encounter.

Finally, Defendants argue that Mr. Reese "has access to legal materials citing to numerous cases[.]" But as represented by Mr. Reese in his motion and at the hearing, and which is of concern to this Court, these legal materials were given to him by others residing at High Desert State Prison, as requests for legal materials through the prison's paging system involve unreasonable delays or, in certain circumstances, no responses. *See, e.g.*, ECF No. 37 at 4, 6.

Accordingly, these circumstances warrant the appointment of *pro bono* counsel in this case.

## III. Conclusion and Order

Because the Court will exercise its discretion to appoint counsel and grant Mr. Reese's motion for appointment of counsel, it will refer the case to the Court's Pro Bono Pilot Program to attempt to find an attorney to accept Plaintiff's case. Mr. Reese should be aware that the Court has no authority to require attorneys to represent indigent litigants in civil cases under 28 U.S.C. § 1915(d). *Mallard v. U.S. Dist. Court for Southern Dist. of Iowa*, 490 U.S. 296, 298, 109 S. Ct. 1814, 104 L. Ed. 2d 318 (1989). Rather, when a court "appoints" an attorney, it can only do so if the attorney voluntarily

© 2022 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

accepts the assignment. *Id. Additionally, Mr. Reese is reminded that until counsel is appointed, he is still responsible{2021 U.S. Dist. LEXIS 12} for complying with all deadlines in his case.* If counsel is found, an order appointing counsel will be issued by the Court, and Mr. Reese will be contacted by counsel.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Appointment of Counsel (ECF No. 37) is **GRANTED**.

**IT IS FURTHER ORDERED** that this case is referred to the Pilot Pro Bono Program adopted in General Order 2019-07 to identify an attorney willing to be appointed as a *pro bono* attorney for Plaintiff. Plaintiff is reminded that he must comply with all deadlines currently set in his case and there is no guarantee that counsel will be appointed. If counsel is found, an order appointing counsel will be issued by the Court, and Plaintiff will be contacted by counsel.

**IT IS FURTHER ORDERED** that the Clerk of Court must forward this order to the Pro Bono Liaison.

**IT IS FURTHER ORDERED** that Plaintiff's other requests in his Motion for Appointment of Counsel are **DENIED**. If Plaintiff would like to bring other matters to the Court's attention, he is free to do so by way of separate motion. *See* LR IC 2-2(b) ("For each type of relief requested or purpose of the document, a separate document must be filed and a separate event must be selected for that{2021 U.S. Dist. LEXIS 13} document.").

DATED: October 25, 2021.

/s/ Brenda Weksler

BRENDA WEKSLER

UNITED STATES MAGISTRATE JUDGE

### Footnotes

1

Mr. Reese was previously represented by McLetchie Law. *See* ECF Nos. 29, 31.

2

For example, Mr. Reese alleges that Dr. Gregory Bryan, a senior physician at High Desert State Prison Hospital, refused to prescribe him the necessary antiviral drugs to treat his chronic Hepatitis C and, instead, prescribed a topical corticosteroid to treat Mr. Reese's skin rashes. ECF No. 1 at 8-9.

3

Mr. Reese has been in Nevada Department of Corrections custody or under its supervision since 1977. ECF No. 1 at 3.

4

It is not clear to the Court whether Mr. Reese has received discovery from his prior counsel, though Mr. Reese did not raise this issue at the hearing.

5

The medical provider only signs their name, and the signature is illegible. See ECF No. 37 at 30.

© 2022 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.



---

**Rodney L. Marshall, Plaintiff, v. State of Nevada, et al., Defendants.**
**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEVADA**
**2021 U.S. Dist. LEXIS 209196**
**Case No. 2:21-cv-00726-JAD-BNW**
**October 29, 2021, Decided**
**October 29, 2021, Filed**

---

**Editorial Information: Prior History**

Marshall v. Stat of Nev., 2021 U.S. Dist. LEXIS 108425, 2021 WL 2327045 (D. Nev., June 4, 2021)

**Counsel**         {2021 U.S. Dist. LEXIS 1}For Rodney L Marshall, Plaintiff: HDSP Law
                Library.

**Judges:** BRENDA WEKSLER, UNITED STATES MAGISTRATE JUDGE.

**Opinion**

**Opinion by:**         BRENDA WEKSLER

**Opinion**

**ORDER re ECF No. 20**

Presently before the Court is *pro se* Plaintiff Rodney L. Marshall's motion for appointment of counsel (ECF No. 20), filed on September 1, 2021.1 Although Mr. Marshall used a form designed for appointment of counsel in *habeas corpus* cases, the Court will construe the motion as a motion for appointment of counsel in his Section 1983 case. *See* ECF No. 20 at 1-3.

Defendants did not file an opposition. The Court attempted to hold a hearing on October 20, 2021, but was unable to reach Mr. Marshall or anyone at Southern Desert Correctional Center. *See* ECF No. 30.

**I. Background**

Mr. Marshall's complaint alleges violations of the Eighth Amendment. ECF No. 1-1 at 3-4. As his complaint indicates, Defendants-various personnel associated with the Nevada Department of Corrections (NDOC)-knew as early as April 2020 of Mr. Marshall's prostate cancer diagnosis but did not inform Mr. Marshall of this diagnosis until October 2020. *Id.* at 4. According to Mr. Marshall, NDOC personnel learned of his prostate cancer diagnosis when they received the results of a biopsy that was completed in March 2020.{2021 U.S. Dist. LEXIS 2} *Id.*

Mr. Marshall further alleges that NDOC personnel have failed to provide him with proper follow-up care since they learned of his diagnosis. More specifically, he alleges that he did not receive a consultation for his prostate cancer until March 8, 2021-nearly a year after Defendants first learned of his diagnosis. *Id.* This delay allegedly occurred despite Mr. Marshall submitting multiple inmate requests, filing grievances, and having discussions with medical staff at High Desert State Prison,

© 2022 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

where he was in custody.2 *Id.* at 4-5. Of note, even after finally receiving a consultation, Mr. Marshall alleges that this consultation was with a physician (Dr. Abbott) who was not the one who had diagnosed him with prostate cancer and that this new physician did not have the records from the diagnosing doctor (Dr. Ludlow). *Id.* at 4-5. The new physician-Dr. Abbott-allegedly ordered a new biopsy, which, as of May 3, 2021 (i.e., when the complaint was filed), had still not been completed. *Id.* at 5. Dr. Abbott also allegedly shared with Mr. Marshall that the "cancer will not go away on its own, could spread, and if not treated in a prompt and adequate manner, it could be terminal." *Id.*

Mr. Marshall**{2021 U.S. Dist. LEXIS 3}** now requests a court-appointed attorney, arguing that he does not have access to his medical files and, even if he did, he does not have the ability to interpret the medical records. ECF No. 20 at 4. He also argues that he needs to amend his complaint regarding the cause of action and parties but does not know how. *Id.* Mr. Marshall adds that he needs counsel to help answer specific questions relating to why there have been delays in his medical treatment and who is responsible for these delays. *Id.* Further, he notes that, on August 28, 2021, he received a second biopsy, presumably the one allegedly ordered by Dr. Abbott in March of this year, but has not received the results despite his attempts to reach out to Dr. Abbott and other medical staff. *Id.*

Defendants did not file a response supporting or opposing Mr. Marshall's instant motion.

**II. Discussion**

Civil litigants do not have a Sixth Amendment right to appointed counsel. *Storseth v. Spellman*, 654 F.2d 1349, 1353 (9th Cir. 1981). In certain circumstances, federal courts are empowered to request an attorney to represent an indigent civil litigant. For example, courts have discretion, under 28 U.S.C. § 1915(e)(1), to "request" that an attorney represent indigent civil litigants upon a showing of "exceptional circumstances." *Agyeman v. Corrections Corp. of Am.*, 390 F.3d 1101, 1103 (9th Cir. 2004)**{2021 U.S. Dist. LEXIS 4}**.

To determine whether the "exceptional circumstances" necessary for appointment of counsel are present, the court evaluates (1) the likelihood of plaintiff's success on the merits. and (2) the plaintiff's ability to articulate his claim *pro se* "in light of the complexity of the legal issues involved." *Agyeman*, 390 F.3d at 1103 (quoting *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986)). A court may find that "exceptional circumstances" exist if a claim is either factually or legally complex. *See, e.g., McElyea v. Babbitt*, 833 F.2d 196, 200 n.3 (9th Cir. 1987) (per curiam) (suggesting that a plaintiff's claim concerning the provision of religious books in prison raises "complicated constitutional issues").

Neither of these factors is dispositive and both must be viewed together. *Wilborn*, 789 F.2d at 1331. It is within the court's discretion whether to request that an attorney represent an indigent civil litigant under 28 U.S.C. § 1915(e)(1). *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009).

**A. Whether Mr. Marshall's claims have a likelihood of success on the merits**

Here, Mr. Marshall's claims have a likelihood of success on the merits.

Mr. Marshall's complaint survived the screening process. ECF No. 7. In the screening order, Judge Dorsey found that he had "adequately pled" a deliberate indifference claim against two prison officials, namely the NDOC medical director Michael Meved and High Desert State Prison**{2021 U.S. Dist. LEXIS 5}** physician Gregory Bryant. *Id.* at 4. Although Judge Dorsey also noted that such adequate pleadings were insufficient "at t[hat] very early stage of the proceedings" to determine Mr. Marshall's likelihood of success, the Ninth Circuit "has indicated that the articulation of a cognizable claim for relief may itself be sufficient to satisfy the 'merit' analysis on a motion for appointment of counsel." *Turner v. Riaz*, No. 216CV0969MCEACP, 2018 U.S. Dist. LEXIS 194391, 2018 WL 5962726, at *4 (E.D. Cal. Nov. 14, 2018) (citing *Tilei v. McGuinness*, 642 F. App'x 719, 722 (9th Cir. 2016)).

© 2022 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Accordingly, Mr. Marshall has presented a plausible Eighth Amendment claim.

**B. Whether Mr. Marshall has an ability to articulate his claim *pro se* "in light of the complexity of the legal issues involved**

Mr. Marshall's position is that he is unable to articulate his claim *pro se* "in light of the complexity of the legal issues involved[,]" noting that he is not trained, has no help, has no law library help, and no resources. ECF No. 20 at 4. Defendants did not file a response, indicating either support or opposition for his position.

In an unpublished decision, the Ninth Circuit held that a plaintiff should be appointed counsel for a deliberate indifference claim stemming from allegations that prison supervisors and physicians failed to properly treat the plaintiff's "'chronic and substantial pain'{2021 U.S. Dist. LEXIS 6} resulting from spine degeneration[.]" *Tilei v. McGuinness*, 642 F. App'x 719, 722 (9th Cir. 2016). The Ninth Circuit reasoned that the plaintiff's "claim will turn on complex medical questions of competing treatment regimens and causation, and likely require the testimony of expert witnesses." *Id.* In another unpublished decision, the Ninth Circuit ordered appointment of counsel in a case also involving a deliberate indifference claim, holding that the claim involved "complex" medical issues relating to the defendants' alleged failure to treat plaintiff's tuberculosis. *Tai Huynh v. Callison*, 700 F. App'x 637, 638 (9th Cir. 2017). The *Tai Huynh* court reasoned that "the record demonstrates that [plaintiff] has little ability to articulate his claims without the benefit of counsel to properly challenge Defendants' expert." *Id.* (citation omitted).

Furthermore, other district courts have also found that such deliberate indifference claims are complex. *See, e.g., Turner v. Riaz*, No. 216CV0969MCEACP, 2018 U.S. Dist. LEXIS 194391, 2018 WL 5962726, at *4 (E.D. Cal. Nov. 14, 2018) ("Appointment of counsel is also appropriate because deliberate indifference claims involve an interplay of factual and legal issues that is inherently complex."); *Cataldo v. Madox*, No. 16-CV-2747-JAH-WVG, 2017 U.S. Dist. LEXIS 98521, 2017 WL 2733924, at *2 (S.D. Cal. June 26, 2017) ("Plaintiff's claims of deliberate indifference to medical needs and failure to protect based on medical status will turn on standards of care, causation,{2021 U.S. Dist. LEXIS 7} and medical treatment issues that may require the testimony of expert witnesses, necessitating expert discovery, a task that is undoubtedly complex."); *cf. Hernandez v. Aranas*, No. 218CV00102JADBNW, 2020 U.S. Dist. LEXIS 18548, 2020 WL 569347, at *6 (D. Nev. Feb. 4, 2020) (holding that the plaintiff's deliberate indifference claim relating to eye treatment is "relatively straightforward" and "despite [the plaintiff's] medical issues and language barrier, [the plaintiff] has sufficiently demonstrated his ability to articulate his position").

Here, Mr. Marshall requires access to his medical records,3 an expert to interpret these records, and an expert witness to establish causation. While many *pro se* litigants would face difficulties in interpreting medical records, the ability to do so is critical in Mr. Marshall's case. This is so based on the nature of Mr. Marshall's deliberate indifference claim under the Eighth Amendment.

Additionally, there is limited evidence that Mr. Marshall possesses an ability to articulate his claims. It appears that he has been relying on other inmates to draft pleadings and motions. *See, e.g.*, ECF No. 1-1 at 9; ECF No. 3 at 4. For example, his complaint was filed on a form template and, although signed by Mr. Marshall, it included a note indicating that "Inmate law clerks" helped prepare{2021 U.S. Dist. LEXIS 8} it. ECF No. 1-1 at 9. Additionally, for the motion for appointment of counsel currently before the Court, Mr. Marshall (again) used a form template but one intended for those seeking appointment of counsel in *habeas* proceedings. *See* ECF No. 20. Furthermore, Mr. Marshall represents that he lacks access to his medical files and the ability to interpret them; he needs to amend his complaint but does not know how; and he is unable to access legal resources, including

© 2022 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

the prison law library.4 *Id.* at 4.

Accordingly, these circumstances warrant the appointment of *pro bono* counsel in this case.

**III. Conclusion and Order**

Because the Court will exercise its discretion to appoint counsel and grant Mr. Marshall's motion for appointment of counsel, it will refer the case to the Court's Pro Bono Pilot Program to attempt to find an attorney to accept Plaintiff's case. Mr. Marshall should be aware that the Court has no authority to require attorneys to represent indigent litigants in civil cases under 28 U.S.C. § 1915(d). *Mallard v. U.S. Dist. Court for Southern Dist. of Iowa*, 490 U.S. 296, 298, 109 S. Ct. 1814, 104 L. Ed. 2d 318 (1989). Rather, when a court "appoints" an attorney, it can only do so if the attorney voluntarily accepts the assignment. *Id.* **Additionally, Mr. Marshall is reminded that until counsel is appointed, he is still{2021 U.S. Dist. LEXIS 9} responsible for complying with all deadlines in his case**. If counsel is found, an order appointing counsel will be issued by the Court and Mr. Marshall will be contacted by counsel.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Appointment of Counsel (ECF No. 20) is **GRANTED**.

**IT IS FURTHER ORDERED** that this case is referred to the Pilot Pro Bono Program adopted in General Order 2019-07 to identify an attorney willing to be appointed as a *pro bono* attorney for Plaintiff. Plaintiff is reminded that he must comply with all deadlines currently set in his case and there is no guarantee that counsel will be appointed. If counsel is found, an order appointing counsel will be issued by the Court, and Plaintiff will be contacted by counsel.

**IT IS FURTHER ORDERED** that the Clerk of Court must forward this Order to the Pro Bono Liaison.

DATED: October 29, 2021.

/s/ Brenda Weksler

BRENDA WEKSLER

UNITED STATES MAGISTRATE JUDGE

**Footnotes**

1

Mr. Marshall previously filed a motion for appointment of counsel about a week after initiating this case. *See* ECF Nos. 1, 3. The District Judge on this case denied that motion without prejudice, reasoning that Mr. Marshall's deliberate indifference claim is one that is commonly filed by those in custody and, thus, not exceptional. ECF No. 7 at 7. Judge Dorsey also noted that it was unclear, "at t[hat] very early stage of proceedings," whether Mr. Marshall "has a likelihood of success." *Id.* She further found that, at that point, Mr. Marshall was "able to articulate his claims at least as well as the average pro se civil-rights litigant." *Id.* at 8.

2

It appears that Mr. Marshall is currently in custody at Southern Desert Correctional Center. *See* ECF No. 28.

3

In his motion for a preliminary injunction, Mr. Marshall includes copies of various requests submitted

© 2022 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

to medical staff requesting the results of his March 2020 biopsy, that the results be shared with his new physician Dr. Abbott, updates regarding the biopsy Dr. Abbott ordered in March 2021, and medical treatment. *See* ECF No. 6 at 10, 12, 15, 16.

4

The Court is particularly concerned with Mr. Marshall's inability to access his medical files and the prison law library.

© 2022 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

EXHIBIT

D

---

**Stephen R.F. Kern, Jr., Plaintiff, v. Calvin Johnson, Defendant.**
**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEVADA**
**2022 U.S. Dist. LEXIS 122646**
**Case No. 2:21-cv-00467-KJD-BNW**
**July 11, 2022, Decided**
**July 11, 2022, Filed**

---

**Counsel**                    **{2022 U.S. Dist. LEXIS 1}**For Stephen R.F. Kern, Jr., Plaintiff: HDSP
       Law Library, LEAD ATTORNEY.
**Judges:** BRENDA WEKSLER, UNITED STATES MAGISTRATE JUDGE.

                              Opinion

**Opinion by:**           BRENDA WEKSLER

                              Opinion

**ORDER**

Before the Court is pro se Plaintiff Stephen Kern's motion for appointment of counsel (ECF No. 22)
filed on June 1, 2022. Defendant did not file an opposition.

**I. Background**

Mr. Kern's First Amended Complaint alleges violations of the Eighth Amendment. ECF No. 9.
Specifically, he alleges that on July 1, 2020, Defendant-Warden Johnson-authorized the use of a
chemical agent to assist in extracting an inmate in a cell close to Kern's. Kern explains he should have
been removed from his cell prior to the use of this chemical agent. He claims the chemical agent
seeped through a hole in the wall filling his cell. This chemical caused injuries to his nose and throat,
blurred vision, and burning skin. He also lost his eyelashes. The only treatment he received was a
shower (four hours later) and a skin ointment from the pill-call nurse but never received an eye wash,
respiratory exam, or other medical attention.

Kern now requests a court-appointed attorney to help with his case in several regards. He explains he
is in administrative segregation, which means he is locked in his**{2022 U.S. Dist. LEXIS 2}** cell
23-hours a day. In addition, he claims he does not have access to the law library. He explains there
are several witnesses (about 15) he needs to locate and interview, and that there is discovery he
needs to obtain (i.e., video footage, medical reports, etc.). Lastly, he explains he is currently not
getting all the documents that are being filed in court.

**II. Discussion**

Civil litigants do not have a Sixth Amendment right to appointed counsel. *Storseth v. Spellman*, 654
F.2d 1349, 1353 (9th Cir. 1981). In certain circumstances, however, federal courts may request that
an attorney represent an indigent civil litigant. For example, courts have discretion, under 28 U.S.C. §

DISHOT                                        1

© 2022 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the
restrictions and terms and conditions of the Matthew Bender Master Agreement.

1915(e)(1), to "request" that an attorney represent indigent civil litigants upon a showing of "exceptional circumstances." *Agyeman v. Corrections Corp. of Am.*, 390 F.3d 1101, 1103 (9th Cir. 2004).

To determine whether the "exceptional circumstances" necessary for appointment of counsel are present, the court evaluates (1) the likelihood of plaintiff's success on the merits. and (2) the plaintiff's ability to articulate his claim pro se "in light of the complexity of the legal issues involved." *Agyeman*, 390 F.3d at 1103 (quoting *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986)). A court may find that "exceptional circumstances" exist if a claim is either factually or legally complex. *See, e.g., McElyea v. Babbitt*, 833 F.2d 196, 200 n.3 (9th Cir. 1987) (per curiam) (suggesting that a plaintiff's claim concerning **{2022 U.S. Dist. LEXIS 3}** the provision of religious books in prison raises "complicated constitutional issues").

Neither of these factors is dispositive and both must be viewed together. *Wilborn*, 789 F.2d at 1331. It is within the court's discretion whether to request that an attorney represent an indigent civil litigant under 28 U.S.C. § 1915(e)(1). *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009).

**A. Whether Mr. Kern's claims have a likelihood of success on the merits**

Here, Mr. Kern's claims have a likelihood of success on the merits.

Mr. Kern's complaint survived the screening process. ECF No. 10. In the screening order, Judge Dawson found that he had "adequately pled" deliberate indifference and conditions of confinement claims against Warden Johnson. The Ninth Circuit "has indicated that the articulation of a cognizable claim for relief may itself be sufficient to satisfy the 'merit' analysis on a motion for appointment of counsel." *Turner v. Riaz*, No. 216CV0969MCEACP, 2018 U.S. Dist. LEXIS 194391, 2018 WL 5962726, at *4 (E.D. Cal. Nov. 14, 2018) (citing *Tilei v. McGuinness*, 642 F. App'x 719, 722 (9th Cir. 2016)).

Accordingly, Mr. Kern has presented plausible Eighth Amendment claims.

**B. Whether Mr. Kern has an ability to articulate his claim pro se "in light of the complexity of the legal issues involved"**

In an unpublished decision, the Ninth Circuit held that a plaintiff should be appointed counsel for a deliberate indifference claim stemming from allegations that prison supervisors and **{2022 U.S. Dist. LEXIS 4}** physicians failed to properly treat the plaintiff's "'chronic and substantial pain' resulting from spine degeneration[.]" *Tilei v. McGuinness*, 642 F. App'x 719, 722 (9th Cir. 2016). The Ninth Circuit reasoned that the plaintiff's "claim will turn on complex medical questions of competing treatment regimens and causation, and likely require the testimony of expert witnesses." *Id.* In another unpublished decision, the Ninth Circuit ordered appointment of counsel in a case also involving a deliberate indifference claim, holding that the claim involved "complex" medical issues relating to the defendants' alleged failure to treat plaintiff's tuberculosis. *Tai Huynh v. Callison*, 700 F. App'x 637, 638 (9th Cir. 2017). The *Tai Huynh* court reasoned that "the record demonstrates that [plaintiff] has little ability to articulate his claims without the benefit of counsel to properly challenge Defendants' expert." *Id.* (citation omitted).

Furthermore, other district courts have also found that such deliberate indifference claims are complex. See, e.g., *Turner v. Riaz*, No. 216CV0969MCEACP, 2018 U.S. Dist. LEXIS 194391, 2018 WL 5962726, at *4 (E.D. Cal. Nov. 14, 2018) ("Appointment of counsel is also appropriate because deliberate indifference claims involve an interplay of factual and legal issues that is inherently complex."); *Cataldo v. Madox*, No. 16-CV-2747-JAH-WVG, 2017 U.S. Dist. LEXIS 98521, 2017 WL 2733924, at *2 (S.D. Cal. June 26, 2017) ("Plaintiff's claims of deliberate indifference to medical needs

DISHOT                                                          2

© 2022 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

and failure{2022 U.S. Dist. LEXIS 5} to protect based on medical status will turn on standards of care, causation, and medical treatment issues that may require the testimony of expert witnesses, necessitating expert discovery, a task that is undoubtedly complex."); *cf. Hernandez v. Aranas*, No. 218CV00102JADBNW, 2020 U.S. Dist. LEXIS 18548, 2020 WL 569347, at *6 (D. Nev. Feb. 4, 2020) (holding that the plaintiff's deliberate indifference claim to eye treatment is "relatively straightforward" and "despite [the plaintiff's] medical issues and language barrier, [the plaintiff] has sufficiently demonstrated his ability to articulate his position").

Here, Kern will likely need an expert to interpret his medical records and provide opinions regarding the effect of this chemical on him. While many pro se litigants would face difficulties in interpreting medical records, the ability to do so is critical in Kern's case. This is so based on the nature of Kern's deliberate indifference claim.

Additionally, Kern represents he is unable to gather or research the information he needs to litigate his case for reasons that have already been mentioned. Accordingly, these circumstances warrant the appointment of pro bono counsel in this case.

## III. Conclusion and Order

Because the Court will exercise its discretion to appoint counsel and grant Kern's motion{2022 U.S. Dist. LEXIS 6} for appointment of counsel, it will refer this case to the Court's Pro Bono Pilot Program to attempt to find an attorney to accept Plaintiff's case. Kern should be aware that the Court has no authority to require attorneys to represent indigent litigants in civil cases under 28 U.S.C.§ 1915(d). *Mallard v. United States Dist. Court for Southern Dist.*, 490 U.S. 296, 298, 109 S. Ct. 1814, 104 L. Ed. 2d 318 (1989). Rather, when a court "appoints" an attorney, it can only do so if the attorney voluntarily accepts the assignment. *Id.* Additionally, Kern is reminded that unless and until counsel is appointed, he is still responsible for complying with all deadlines in his case. If counsel is found, an order appointing counsel will be issued by the Court and Kern will be contacted by counsel.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Appointment of Counsel (ECF No. 22) is GRANTED.

**IT IS FURTHER ORDERED** that this case is referred to the Pilot Pro Bono Program adopted in General Order 2019-07 to identify an attorney willing to be appointed as a pro bono attorney for Plaintiff. Plaintiff is reminded that he must comply with all deadlines currently set in his case and there is no guarantee that counsel will be appointed. If counsel is found, an order appointing counsel will be issued by the Court, and Plaintiff will be{2022 U.S. Dist. LEXIS 7} contacted by counsel.

**IT IS FURTHER ORDERED** that the Clerk of Court must forward this Order to the Pro Bono Liaison.

**IT IS FURTHER ORDERED** that the hearing set for July 26, 2022 is VACATED.

DATED: July 11, 2022

/s/ Brenda Weksler

BRENDA WEKSLER

UNITED STATES MAGISTRATE JUDGE

© 2022 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.



> **Kentrell D Welch, Plaintiff, v. Michael Minev, et al., Defendants.**
> **UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEVADA**
> **2021 U.S. Dist. LEXIS 257620**
> **Case No. 2:19-cv-01064-GMN-BNW**
> **August 9, 2021, Decided**
> **August 9, 2021, Filed**

**Counsel**            {2021 U.S. Dist. LEXIS 1}For G Bryant, contracted general practitioner M.D., Defendant: Christopher Michael Guy, LEAD ATTORNEY, Office of Attorney General, Las Vegas NV.

For Gallo, Defendant: Christopher Michael Guy, LEAD ATTORNEY, Office of Attorney General, Las Vegas NV.

For Legal Aid Center of Southern Nevada, Interested Party: Barbara Buckley, LEAD ATTORNEY, Legal Aid Center of Sournhern Nevada, Las Vegas NV.

For Kentrell Welch, PO Box 1989, Plaintiff: ESP Law Library, LEAD ATTORNEY.

For Kentrell Welch, formerly known as, Plaintiff: Justin V Alper, LEAD ATTORNEY, Henderson NV.

For Brian Williams, Warden, Defendant: Christopher Michael Guy, LEAD ATTORNEY, Office of Attorney General, Las Vegas NV.

For Tito Buencamino, NDOC Dir of Nursing, Defendant: Christopher Michael Guy, LEAD ATTORNEY, Office of Attorney General, Las Vegas NV.

For Jennifer Nash, Associate Warden, Defendant: Christopher Michael Guy, LEAD ATTORNEY, Office of Attorney General, Las Vegas NV.

For Kentrell Welch, Kentrell D Welch, Plaintiff: ESP Law Library, LEAD ATTORNEY.

For Kentrell Welch, 1030777, Plaintiff: Justin V Alper, LEAD ATTORNEY, Henderson NV.

For Michael Minev, NDOC Medical Dir, Defendant: Christopher Michael Guy, LEAD ATTORNEY, Office of{2021 U.S. Dist. LEXIS 2} Attorney General, Las Vegas NV.

For Kentrell Welch, PO Box 1989, Plaintiff: Justin V Alper, LEAD ATTORNEY, Henderson NV.

For Kentrell Welch, 1030777, Plaintiff: ESP Law Library, LEAD ATTORNEY.

For Kentrell Welch, Ely State Prison, Plaintiff: Justin V Alper, LEAD ATTORNEY, Henderson NV.

For Kentrell Welch, Ely State Prison, Plaintiff: ESP Law Library, LEAD ATTORNEY.

For Kentrell Welch, Ely NV 89301, Plaintiff: ESP Law Library, LEAD ATTORNEY.

For Kentrell Welch, Ely NV 89301, Plaintiff: Justin V Alper, LEAD ATTORNEY, Henderson NV.

For Kentrell Welch, formerly known as, Plaintiff: ESP Law

© 2022 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Library, LEAD ATTORNEY.
                    For Kentrell Welch, Kentrell D Welch, Plaintiff: Justin V Alper,
LEAD ATTORNEY, Henderson NV.
                    For Paternoster, Defendant: Christopher Michael Guy, LEAD
ATTORNEY, Office of Attorney General, Las Vegas NV.
**Judges:** BRENDA WEKSLER, UNITED STATES MAGISTRATE JUDGE.

Opinion

**Opinion by:**          BRENDA WEKSLER

Opinion

## ORDER

Before the Court is pro se Plaintiff Kentrell Welch's motion for appointment of counsel filed on February 4, 2021. ECF No. 44. Defendants Gregory Bryant, Alberto Buenocamino, Louie Gallo, Michael Minev, Jennifer Nash, Charles Paternostro, and Brian Williams responded to this motion on February 12, 2021. ECF No. 48. Thereafter, **{2021 U.S. Dist. LEXIS 3}** Plaintiff replied to Defendant's response on February 24, 2021. ECF No. 55. This Court will grant Plaintiff's motion, as it has become clear that Plaintiff cannot properly continue articulating the relief he seeks and because the need for an expert witness will increase the complexity of the case (such that it will severely impair Mr. Welch's ability to properly articulate the legal claims at hand).

### I. Background

On June 12, 2020, this Court screened Mr. Welch's Amended Complaint and found he stated a colorable Eighth Amendment deliberate indifference to a serious medical need claim against several defendants. ECF No. 22. The Court allowed the claim to proceed against Dr. Bryant and Dr. Minev based on the allegations that prison officials knew Mr. Welch had hyperthyroid disease since 2014, that Dr. Bryant wanted to wait for the thyroid condition to "burn itself out," and that Dr. Bryant and Dr. Minev denied thyroid surgery because of cost. The Court further found that the allegations that Dr. Bryant and Dr. Minev could not figure out what was wrong with Welch but refused to refer Welch to an outside specialist or order a full blood panel provided another basis for a deliberate indifference claim. As **{2021 U.S. Dist. LEXIS 4}** to Defendants Paternoster and Gallo, the Court found that Mr. Welch stated a colorable claim based on allegations that those officers removed Mr. Welch from the middle of his medical appointment and did not return him to his medical appointment despite knowing that he had medical issues and was in constant pain. Lastly, as to Defendants Buenocamino, Williams, and Nash, the Court found that Mr. Welch stated a colorable claim based on the allegation that Mr. Welch notified them about his chronic conditions, but they failed to do anything.

### A. Argument by Plaintiff (ECF No. 44)

Mr. Welch requests counsel based on (1) his compromised intellectual abilities and the ways in which this exacerbates his inability to understand governing laws and procedures; and (2) the complexities of the case as they pertain to the need for a medical expert.

### B. Defendants' Response (ECF No. 48)

Defendants mainly focus on this Court's screening order (ECF No. 31) and the prior order denying the appointment of counsel (ECF No. 31). While Defendants recognize this Court has already found that

1yicases                                    2

© 2022 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Mr. Welch has some likelihood of success given the liberal pleading standard, they explain that the claim is neither legally{2021 U.S. Dist. LEXIS 5} nor factually complex.

As explained by Defendants, this Court previously found that Mr. Welch was able to state colorable claims against several defendants, to file an application to proceed in forma pauperis, and to file a host of other motions. As defendants correctly point out, Plaintiff has filed several other motions since then. According to Defendants, this is evidence that Mr. Welch is adept at maneuvering within the judicial process.

In addition, Defendants argue that this Court already found that no exceptional circumstances exist that warrant the appointment of counsel when it previously denied the request at ECF No. 31. Defendants further argue that Mr. Welch has not shown how this case has changed in complexity since the time the Court denied Plaintiff's last request.

**C. Plaintiff's Reply (ECF No. 57)**

Mr. Welch's reply does not substantively address the response or add to his moving papers. ECF No. 57.

**II. Legal Standard**

Civil litigants do not have a Sixth Amendment right to appointed counsel. *Storseth v. Spellman*, 654 F.2d 1349, 1353 (9th Cir. 1981). However, courts have discretion, under 28 U.S.C. § 1915(e)(1), to request that an attorney represent civil, pro se litigants upon a showing of "exceptional circumstances." *Agyeman v. Corr. Corp. of Am.*, 390 F.3d 1101, 1103 (9th Cir. 2004).

To determine whether the exceptional circumstances{2021 U.S. Dist. LEXIS 6} necessary for the appointment of counsel are present, the court evaluates (1) the likelihood of plaintiff's success on the merits and (2) the plaintiff's ability to articulate his claim pro se "in light of the complexity of the legal issues involved." *Agyeman*, 390 F.3d at 1103. Neither of these factors is dispositive and both must be viewed together. *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986).

The common difficulties that any litigant would have in proceeding pro se do not indicate exceptional circumstances. *Wood v. Housewright*, 900 F.2d 1332, 1335-36 (9th Cir. 1990), 1335-36 (9th Cir. 1990); *Rand v. Rowland*, 113 F.3d 1520, 1525 (9th Cir. 1997) (acknowledging that any pro se litigant would be better served with the assistance of counsel).

**III. Discussion**

Plaintiff has demonstrated that exceptional circumstances exist warranting the appointment of counsel.

**A. Likelihood of Success on the Merits**

Mr. Welch's claim survived the Court's screening. ECF No. 22. Therefore, plaintiff has shown some likelihood of success on the merits.

**B. Ability to Articulate the Claim Considering the Complexity of the Legal Issues**

Although initially Mr. Welch demonstrated an ability to articulate his claims without an attorney despite his cognitive abilities, the Court believes this is no longer the case. Plaintiff's recent motions are exceedingly difficult to understand and make it apparent that he does not understand{2021 U.S. Dist. LEXIS 7} the rules of procedure that govern this case. In addition, the case will increase in complexity given the need for a medical expert. *Tabron v. Grace*, 6 F.3d 147, 156 (3d Cir. 1993) (stating that appointed counsel may be warranted where the case will require testimony from expert witnesses);

© 2022 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

See *Tilei v. McGuinness*, 642 F. App'x 719, 722 (9th Cir. 2016) (finding <mark>a prisoner with a medical incapacity could not articulate his claims, which were made complex by the need for medical expert testimony to explain causation and competing treatment options)</mark>; *Clemons v. Hill*, 743 F. App'x 885, 886 (9th Cir. 2018) <mark>(finding appointment of counsel is generally appropriate in cases where an incarcerated plaintiff is expected to find a medical expert)</mark>.

<mark>The Court will refer the case to the Court's Pro Bono Pilot Program to attempt to find an attorney to accept Plaintiff's case.</mark> Plaintiff should be aware that the federal court has no authority to require attorneys to represent indigent litigants in civil cases under 28 U.S.C. § 1915(d). *Mallard v. U.S. Dist. Ct. for S. Dist. of Iowa*, 490 U.S. 296, 298 (1989). Rather, when a Court "appoints" an attorney, it can only do so if the attorney voluntarily accepts the assignment. *Id.* If counsel is found for Plaintiff, he will be contacted by counsel. Plaintiff is reminded that until counsel is appointed, he is still responsible for complying with all deadlines in his case.

**IT IS THEREFORE ORDERED** that Plaintiff's **{2021 U.S. Dist. LEXIS 8}** motion for appointment of counsel (ECF No. 44) is GRANTED.

**IT IS FURTHER ORDERED** that this case is referred to the Pilot Pro Bono Program for the purpose of identifying an attorney willing to be appointed as a pro bono attorney for Plaintiff. Plaintiff is reminded that he must comply with all deadlines currently set in his case, and there is no guarantee that counsel will be appointed. If counsel is found, Plaintiff will be contacted by counsel.

**IT IS FURTHER ORDERED** that the Clerk of Court must forward this order to the Federal Court Pro Bono Program Liaison.

DATED: August 9, 2021

/s/ Brenda Weksler

BRENDA WEKSLER

UNITED STATES MAGISTRATE JUDGE

© 2022 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.



---

**Keshone Owens, Plaintiff, v. James Dzurenda, et al., Defendants.**
**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEVADA**
**2021 U.S. Dist. LEXIS 215417**
**Case No. 2:19-cv-00126-RFB-BNW**
**November 8, 2021, Decided**
**November 8, 2021, Filed**

---

**Editorial Information: Subsequent History**

Later proceeding at Owens v. Dzurenda, 2022 U.S. App. LEXIS 5288 (9th Cir. Nev., Feb. 28, 2022)

**Editorial Information: Prior History**

Owens v. Dzurenda, 2020 U.S. Dist. LEXIS 262895, 2020 WL 13179328 (D. Nev., Mar. 2, 2020)

**Counsel**          **{2021 U.S. Dist. LEXIS 1}**Keshone Owens, Plaintiff, Pro se, Indian
               Springs, NV.

**Judges:** BRENDA WEKSLER, UNITED STATES MAGISTRATE JUDGE.

**Opinion**

**Opinion by:**          BRENDA WEKSLER

**Opinion**

**ORDER re ECF No. 47**

Presently before the Court is Plaintiff Keshone Owens' motion for appointment of counsel. ECF No. 47. Defendants opposed the request. ECF No. 53. Plaintiff replied. ECF No. 56.

**I. Procedural Background**

Plaintiff's complaint alleges the following: Plaintiff was convicted of multiple category B felonies in 2008. Under Nevada law, incarcerated persons can receive credits toward their sentences. The credits play a part in determining an inmate's eligibility for parole, expiration date, custody level, and program eligibility. The Nevada Department of Corrections ("NDOC") and the Nevada State Board of Parole Commissioners failed to properly apply credits to Plaintiff under NRS 209.4465(7)(b). This delayed Plaintiff's parole eligibility.

In 2015, a Nevada Supreme Court decision outlined the correct application of the credits. Defendants knew, as of that time, how the credits should be applied. Plaintiff filed a petition for a writ of habeas corpus based on the improper calculation of his credits, after which Defendants applied the credits correctly. Plaintiff attached the State's**{2021 U.S. Dist. LEXIS 2}** response to his petition as an exhibit. The State opposed the petition for habeas corpus as moot because NDOC had already changed Plaintiff's parole eligibility date on his active sentences from January 20, 2023 to March 11, 2020. The State's response also noted that Plaintiff was sentenced on a total of 14 counts and, as of the date of

1yicases                                              1

© 2022 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Plaintiff's petition for a writ of habeas corpus, Plaintiff still had sentences left to serve associated with seven of those counts after being paroled on the sentences he was currently serving. Based on these allegations, Plaintiff claims that Defendants violated his Fourteenth Amendment right to due process, committed an ex-post facto violation, and subjected Plaintiff to cruel and unusual punishment.

After screening Mr. Owens' complaint, this Court found that he had properly pled the ex-post facto claim but dismissed the Fourteenth Amendment due process claim and the Eighth Amendment claim. ECF No. 8. The Court also denied the appointment of counsel at that time. *Id.*

Plaintiff moves once again to appoint him counsel. ECF No. 47. Plaintiff requests counsel for several reasons: (1) he argues the case is too complex and that he cannot understand the law surrounding these issues; (2) he explains **{2021 U.S. Dist. LEXIS 3}** he is unable to properly investigate the case, and does not know how to go about getting the names of the defendants he wishes to add (nor does he quite understand who may be liable) or how to take depositions; (3) he has had to rely on a "jail house lawyer" for all of his filings with the Court; (4) he explains Defendants have provided discovery "for [his] eyes only," which creates a problem given his need to rely on others to help him; and (5) he argues that counsel would be much better suited to prosecute the case than he is. Lastly, to the extent the Court is not willing to provide counsel for all purposes, he requests that counsel be appointed to help with discovery issues.

Defendants oppose Plaintiff's motions for appointment of counsel. ECF No. 53. Defendants argue that Plaintiff has not met the standard for demonstrating exceptional circumstances, which requires the Court to analyze Plaintiff's likelihood of success on the merits and the complexity of the case. As to the first prong of the analysis, Defendants argue (1) Plaintiff does not have sufficient admissible evidence to prove any retroactive increase in punishment, (2) Plaintiff does not specify which programs or what **{2021 U.S. Dist. LEXIS 4}** custody level he should be afforded, and (3) that Defendants have qualified immunity. As to the second prong, Defendants argue (1) Plaintiff has been able to articulate his claim by filing multiple motions, oppositions and replies, (2) Plaintiff has participated in mediation, and (3) the case is not complex.

Plaintiff's reply argues the Court should not consider any current lack of evidence, that the immunity arguments has been discredited by this Court, that he relies on others for his filings, and that the mediation Defendants mention lasted three minutes. ECF No. 56.

## II. Analysis

Civil litigants do not have a Sixth Amendment right to appointed counsel. *Storseth v. Spellman*, 654 F.2d 1349, 1353 (9th Cir. 1981). In very limited circumstances, federal courts are empowered to request an attorney to represent an indigent civil litigant. For example, courts have discretion, under 28 U.S.C. § 1915(e)(1), to "request" that an attorney represent indigent civil litigants upon a showing of "exceptional circumstances." *Agyeman v. Corrections Corp. of Am.*, 390 F.3d 1101, 1103 (9th Cir. 2004).

To determine whether the "exceptional circumstances" necessary for appointment of counsel are present, the court evaluates (1) the likelihood of plaintiff's success on the merits, and (2) the plaintiff's ability to articulate his claim pro se "in light of the complexity **{2021 U.S. Dist. LEXIS 5}** of the legal issues involved." *Id.* (quoting *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986)). A court may find that "exceptional circumstances" exist if a claim is either factually or legally complex. *See, e.g., McElyea v. Babbitt*, 833 F.2d 196, 200 n.3 (9th Cir. 1987) (per curiam) (suggesting that a plaintiff's claim concerning the provision of religious books in prison raises "complicated constitutional issues").

Neither of these factors is dispositive and both must be viewed together. *Wilborn*, 789 F.2d at 1331. It

1yicases                                            2

© 2022 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

is within the court's discretion whether to request that an attorney represent an indigent civil litigant under 28 U.S.C. § 1915(e)(1). *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009).

Here, Plaintiff has some likelihood of success on the merits, as his ex-post facto claim has survived screening. *See* ECF No. 8. In addition, while the arguments surrounding this claim have not been fully briefed, the Court notes this involves the interpretation and analysis of a somewhat recent case (*Williams v. State Dept. of Corrections*, 133 Nev. 594, 402 P.3d 1260 (Nev. 2017)). The fact that Plaintiff may not at this point have admissible evidence with regard to his claim does not necessarily mean he will not by the time summary judgment motions are briefed. Lastly, any issues surrounding immunity claims and any deficiencies in pleading have not resulted in the dismissal of this claim (as the claim survived a motion to dismiss).

In addition, Plaintiff's ability{2021 U.S. Dist. LEXIS 6} to articulate his claim *pro se* is substantially diminished by his need to rely on others to present his arguments, especially given his inability to share discovery with them. Given the need for Plaintiff to rely on others for his filings, the Court cannot credit the substance of the filings to Plaintiff himself. In its discretion, given the limitations existent in this case, this Court finds this case presents exceptional circumstances that justify appointing counsel in this case.

The Court will refer this case to the Court's Pro Bono Pilot Program to attempt to find an attorney to accept Plaintiff's case. Plaintiff should be aware that the federal court has no authority to require attorneys to represent indigent litigants in civil cases under 28 U.S.C. § 1915(d). *Mallard v. U.S. Dist. Court for Southern Dist. of Iowa*, 490 U.S. 296, 298, 109 S. Ct. 1814, 104 L. Ed. 2d 318 (1989). Rather, when a court "appoints" an attorney, it can only do so if the attorney voluntarily accepts the assignment. *Id.* If counsel is found for Plaintiff, the Court will issue an order appointing counsel, and counsel will contact Plaintiff. Plaintiff is reminded that until counsel is provided, he is still responsible for complying with all deadlines in his case, including the deadline to amend pleadings.

### III. Conclusion and Order

IT IS THEREFORE{2021 U.S. Dist. LEXIS 7} ORDERED that Plaintiff's motion for appointment of counsel (ECF No. 47) is **GRANTED**.

**IT IS FURTHER ORDERED** that this case is referred to the Pilot Pro Bono Program adopted in General Order 2019-07 for the purpose of identifying an attorney willing to be appointed as a pro bono attorney for Plaintiff. **Plaintiff is reminded that he must comply with all deadlines currently set in his case, and there is no guarantee that counsel will be appointed.** If counsel is found, an order appointing counsel will be issued by the Court, and Plaintiff will be contacted by counsel.

**IT IS FURTHER ORDERED** that the Clerk of Court must forward this Order to the Pro Bono Liaison.

DATED: November 8, 2021.

/s/ Brenda Weksler

BRENDA WEKSLER

UNITED STATES MAGISTRATE JUDGE

© 2022 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.



**DOLLY BELLE, Plaintiff, v. ANDREW SAUL, Commissioner of Social Security,1 Defendant.**
**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEVADA**
**2020 U.S. Dist. LEXIS 38745**
**Case No. 2:19-cv-00077-JAD-EJY**
**March 5, 2020, Decided**
**March 5, 2020, Filed**

**Editorial Information: Prior History**

Belle v. Berryhill, 2019 U.S. Dist. LEXIS 9137 (D. Nev., Jan. 18, 2019)

**Counsel**                    {2020 U.S. Dist. LEXIS 1}Dolly Belle, Plaintiff, Pro se, Las Vegas, NV.
**Judges:** ELAYNA J. YOUCHAH, UNITED STATES MAGISTRATE JUDGE.

**Opinion**

**Opinion by:**        ELAYNA J. YOUCHAH

**Opinion**

**ORDER**

This matter is before the Court regarding Plaintiff's Response (ECF No. 11) to this Court's Order to Show Cause (ECF No. 10). Plaintiff seeks judicial review of the Social Security Administration's denial of disability benefits on her son's behalf.

The Court stated in its February 25, 2020 Order to Show Cause that:

Plaintiff failed to timely advise the Court whether she would retain counsel on behalf of her minor child, nor did she file a renewed motion for appointment of counsel. However, on June 24, 2019, Plaintiff filed a letter notifying the Court that she has "been through at least 10 attorneys . . . who accepted [her] case, and then in very short time . . . , contact[ed her] telling [her] that they can no longer represent [her] child." ECF No. 8 at 2.

IT IS HEREBY ORDERED that Plaintiff is directed to show cause, in writing, no later than March 17, 2020, why this matter should not be dismissed for failure to comply with this Court's March 28, 2019 Order (ECF No. 7). Failure to timely respond to this Order to Show Cause shall result in a recommendation to the District{2020 U.S. Dist. LEXIS 2} Judge that this case be dismissed.ECF No. 10 at 2:19-3:7.

Although the Court is sympathetic to Plaintiff's predicament, it is constrained by Circuit precedent, which holds that "a non-attorney parent must be represented by counsel in bringing an action on behalf of his or her child." *Johns v. Cnty. of San Diego*, 114 F.3d 874, 876 (9th Cir. 1997). In addition, Plaintiff has not provided supporting documents to establish that she has exhausted her administrative remedies [on her son's behalf], nor has she established that this action was commenced within sixty days after notice of a final decision by the Commissioner.

© 2022 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Accordingly,

On March 3, 2020, Plaintiff timely responded to the Order to Show Cause, but failed to discuss whether she seeks to retain counsel on behalf of her minor child, court-appointed or otherwise. ECF No. 11. Plaintiff also did not attach any supporting documents to establish that her son's administrative remedies have been exhausted, nor to show that this suit was commenced within sixty days after notice of a final decision by the Commissioner. Plaintiff, however, did attach supporting documents respecting her son's recent hospital visit and his Individualized Educational Program. ECF No. 11-1.

A litigant in a civil rights action{2020 U.S. Dist. LEXIS 3} does not have a Sixth Amendment right to appointed counsel. *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009) (citing *Storseth v. Spellman*, 654 F.2d 1349, 1353 (9th Cir. 1981)). However, the Court may ask an attorney to represent an indigent litigant pursuant to 28 U.S.C. § 1915(e)(1). The Court cannot require counsel to represent a party under this statute or direct payment for a litigant's attorney's fees; the statute merely allows the Court to request that an attorney represent an indigent litigant on a pro bono basis. *Mallard v. United States Dist. Ct.*, 490 U.S. 296, 304-05, 109 S. Ct. 1814, 104 L. Ed. 2d 318 (1989); *United States v. 30.64 Acres of Land*, 795 F.2d 796, 798-804 (9th Cir. 1986).

Attorneys admitted to practice in the District of Nevada have a strong tradition of providing pro bono representation to indigent litigants in civil cases. General Order 2014-01 established the Pilot Pro Bono Program ("Program") through which volunteer lawyers provide their time and resources to preserve access to justice for individuals unable to afford counsel and these lawyers greatly assist the court in the performance of its mission. At any time during the course of litigation, the Court may exercise its discretion to refer the case to the Program for the appointment of pro bono counsel. However, referral to the Program is not an endorsement of the merits of the case and it does not guarantee that an attorney will be willing and available to accept the appointment.

Based on the{2020 U.S. Dist. LEXIS 4} procedural posture of this case, the Court finds good cause to refer this case to the Pilot Pro Bono Program. This case is, therefore, referred to the Program for the purpose of screening for financial eligibility and identifying counsel willing and available to be appointed as pro bono counsel for Plaintiff's son. The scope of appointment shall be for all purposes through the conclusion of the case but does not extend to the appeal, if any, of a final decision.

Accordingly,

IT IS HEREBY ORDERED that this case is referred to the Pilot Pro Bono Program for appointment of counsel for the purposes identified herein. By referring this case to the Program, the Court is not expressing an opinion as to the merits of the case or guaranteeing that a volunteer lawyer will be willing and available to accept the appointment.

IT IS FURTHER ORDERED that the Clerk of the Court SHALL mail Plaintiff a copy of General Order 2014-01 along with this Order.

IT IS FURTHER ORDERED that the Clerk of the Court SHALL forward a copy of this Order to the Pro Bono Liaison.

DATED THIS 5th day of March, 2020.

/s/ Elayna J. Youchah

ELAYNA J. YOUCHAH

UNITED STATES MAGISTRATE JUDGE

© 2022 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

**Footnotes**

1    Andrew Saul is the current Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d). See also 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

2yicases    3

© 2022 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.



EXHIBIT

H

PATRYNA L. MCQUEEN, Plaintiff, v. NYE COUNTY SHERIFF'S OFFICE, et al., Defendants.
UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEVADA
2015 U.S. Dist. LEXIS 105591
Case No. 2:15-CV-00905-APG-VCF
August 10, 2015, Decided
August 10, 2015, Filed

**Editorial Information: Prior History**

McQueen v. Nye County Sheriff's Office, 2015 U.S. Dist. LEXIS 104658 (D. Nev., June 5, 2015)

**Counsel**             {2015 U.S. Dist. LEXIS 1}Patryna L. McQueen, Plaintiff, Pro se,
          Pahrump, NV.

**Judges:** ANDREW P. GORGON, UNITED STATES DISTRICT JUDGE.

Opinion

**Opinion by:**           ANDREW P. GORGON

Opinion

**ORDER (1) ACCEPTING AND MODIFYING REPORT AND RECOMMENDATION AND (2) REFERRING CASE TO THE PRO BONO PROGRAM**

(Dkt. #3)

On June 5, 2015, Magistrate Judge Ferenbach granted prose plaintiff Patryna McQueen's motion to proceed in forma pauperis and screened the complaint. (Dkt. #3.) He also denied without prejudice her request to be appointed counsel. Judge Ferenbach recommended that McQueen's claims against the State of Nevada and the Nye County Sheriff's Office be dismissed with prejudice. Judge Ferenbach also recommended that McQueen's claims for money damages against the defendants in their official capacities be dismissed with prejudice, but with leave to amend to add claims for injunctive relief against the defendants in their official capacities. Finally, Judge Ferenbach denied without prejudice McQueen's request to appoint counsel because it was unclear at this early stage of the case whether McQueen's case had merit and McQueen thus far has been able to articulate her claims.

I accept and modify Judge Ferenbach's Report & Recommendations as set forth more fully below. I{2015 U.S. Dist. LEXIS 2} also refer this matter to the court's Pro Bono Program to see if a lawyer is willing to represent McQueen.

**A. Screening the Complaint**

1. Claims that do not survive screening

I conducted a de novo review of the issues set forth in the Report & Recommendation. 28 U.S.C. §

4yicases                                        1

© 2022 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

636(b)(1). Judge Ferenbach's Report & Recommendation sets forth the proper legal analysis and factual basis for the decision to dismiss with prejudice some of McQueen's claims. McQueen's claims against the State of Nevada and the Nye County Sheriff's Office are dismissed with prejudice for the reasons stated by Judge Ferenbach. Additionally, McQueen's claims for money damages against defendants Anthony Demeo, D. Thomassian, Detective Scott, and M. Eiserloffel in their official capacities are dismissed with prejudice for the reasons stated by Judge Ferenbach.

Count four of McQueen's complaint alleges that she has been the subject of harassment from the Nye County Sheriff's Office and was arrested and charged with crimes that later were dismissed. (*Id.* at 15-16.) McQueen alleges that due to this harassment she lost her job, her health declined, and her reputation has been damaged. (*Id.*) McQueen asserts this claim arises under the First Amendment. (>Id.)

Although I must{**2015 U.S. Dist. LEXIS 3**} construe McQueen's pro se complaint liberally, these allegations are too vague and conclusory to survive screening. It is unclear what constitutional violation she is alleging and she does not name any particular defendant who has been harassing her. Count four therefore is dismissed without prejudice as to defendants Anthony Demeo, D. Thomassian, Detective Scott, and M. Eiserloffel in their individual capacities.

However, McQueen has leave to amend her complaint to add claims for injunctive relief against these defendants in their official capacities if she has a basis to do so. Additionally, she has leave to amend count four of her complaint to sufficiently allege factual allegations supporting her claim and to identify which defendants she is asserting this claim against. If McQueen chooses to amend the complaint, she is informed that the Court cannot refer to a prior pleading (i.e., her original complaint) in order to make the amended complaint complete. As a general rule, an amended complaint supersedes the original complaint. *See Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir. 1967), and Local Rule 15-1 requires that an amended complaint be complete in itself without reference to any prior pleading. Once a plaintiff files an amended complaint,{**2015 U.S. Dist. LEXIS 4**} the original complaint no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. Because, as discussed below, some of McQueen's claims survive screening, she need not file an amended complaint if she intends to proceed on only the surviving claims.

2. Claims that survive screening

a. Count One - unreasonable search and seizure

Count one alleges that defendant Thomassian conducted an unreasonable search of McQueen's residence when he failed to identify in the search warrant which specific unit at the subject property was subject to search. (Dkt. # 1-2 at 8.) McQueen and her husband, from whom she was separated, lived in separate units at the same address. (*Id.*) The warrant was supposed to be for her husband's unit, but instead the search was conducted in McQueen's unit. (*Id.*)

Liberally construing the complaint's allegations, this count states a claim against Thomassian. There are no factual allegations that any of the other named defendants participated in the allegedly faulty warrant or in the search of the unit. Accordingly, count one survives only as to defendant{**2015 U.S. Dist. LEXIS 5**} Thomassian in his individual capacity.1

b. Count Two - deliberate indifference to medical needs

In count two, McQueen alleges that during the search of her unit, she experienced chest pains. (*Id.* at 10.) Emergency personnel determined she was suffering from signs of a "pre-heart attack" and requested to take her to the hospital. (*Id.* at 11.) A Nye County sheriff officer refused to let her leave

© 2022 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

the scene. (*Id.*) McQueen identifies this officer as a John Doe, but she suspects this person was Officer Corey. Corey is not named as a defendant in this action.

McQueen then was taken to the detention center where her requests to see a doctor were ignored for two days until she was released. (*Id.* at 11-12.) McQueen alleges the lack of medical care resulted from a policy of not employing medical staff at the detention center in Nye County. (*Id.*) McQueen alleges that, as sheriff, defendant Demeo is responsible for the medical needs of detainees in the detention center. (*Id.*)

Liberally **{2015 U.S. Dist. LEXIS 6}** construing the complaint's allegations, this count states a claim against Demeo. There are no factual allegations as to any other named defendant in relation to this count. Accordingly, count two survives only as to defendant Demeo in his individual capacity.

c. Count Three - unreasonable search and seizure

Count three alleges that defendant Scott obtained a search warrant to search for stolen property at Mc Queen's residence. (*Id.* at 13.) According to the complaint, Scott had no probable cause to support the warrant and he sought it to harass McQueen. (*Id.*) No stolen property was located in McQueen's unit. (*Id.*) McQueen alleges defendant Eiserloffel later applied for another search warrant to search her residence. (*Id.* at 14.) During this search, Eiserloffel seized computers from her home. (*Id.*) According to the complaint, there is no evidence of criminal activity, but McQueen's property has not been returned. (*Id.*)

Liberally construing the complaint's allegations, this count states a claim against Scott and Eiserloffel. There are no factual allegations as to any other named defendant in relation to this count. Accordingly, count three survives only as to defendants Scott and Eiserloffel in their individual **{2015 U.S. Dist. LEXIS 7}** capacities.

McQueen's claims for money damages against defendants Anthony Demeo, D. Thomassian, Scott, and M. Eiserloffel in their individual capacities survive screening as set forth above. Accordingly, I will direct the clerk of court to file the complaint and to issue summonses for these defendants.

**B. Motion to Appoint Counsel**

A district court "may request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1). Whether to appoint counsel lies within the court's discretion. *Agyeman v. Corr. Corp. of Am.*, 390 F.3d 1101, 1103 (9th Cir. 2004). To determine whether exceptional circumstances exist to support appointing counsel, the Court evaluates "the likelihood of the plaintiff's success on the merits" and "the plaintiff's ability to articulate his claims 'in light of the complexity of the legal issues involved.'" *Id.* (quoting *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986)).

Judge Ferenbach denied without prejudice McQueen's motion for appointment of counsel because she failed to show exceptional circumstances warranting appointed counsel. (Dkt. #3.) His decision to deny appointment of counsel without prejudice was neither clearly erroneous nor contrary to law. 28 U.S.C. § 636(b)(1)(A). Judge Ferenbach identified and applied the correct legal standard. McQueen has stated claims that survive screening, but it is **{2015 U.S. Dist. LEXIS 8}** difficult to determine the merits of those claims at this early stage of the proceedings. Up to this early point, McQueen has demonstrated an ability to articulate her claims, and the legal issues are not complex. However, I will refer the case to the Pilot Pro Bono Program to see if there is an attorney willing to be appointed as McQueen's counsel. This is not a guarantee of appointment of counsel, nor is it a ruling that McQueen is entitled to counsel. I am referring the matter to the Pilot Pro Bono Program solely as a courtesy to McQueen.

**C. Conclusion**

4yicases                                      3

© 2022 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

IT IS THEREFORE ORDERED that the Magistrate Judge's report and recommendation (Dkt. #3) is accepted and modified as set forth in this order.

IT IS FURTHER ORDERED that plaintiff Patryna L. McQueen's claims against defendants State of Nevada and Nye County Sheriff's Office are DISMISSED with prejudice.

IT IS FURTHER ORDERED that plaintiff Patryna L. McQueen's claims against defendants Anthony L. Demeo, D. Thomassian, Detective Scott, and Detective M. Eiserloffel for money damages in their official capacities are dismissed with prejudice.

IT IS FURTHER ORDERED that count four of the complaint is dismissed without prejudice as to defendants **{2015 U.S. Dist. LEXIS 9}** Anthony L. Demeo, D. Thomassian, Detective Scott, and Detective M. Eiserloffel for money damages in their individual capacities.

IT IS FURTHER ORDERED that the following claims against defendants Anthony L. Demeo, D. Thomassian, Detective Scott, and Detective M. Eiserloffel for money damages in their individual capacities may proceed:

1. Count one as to defendant D. Thomassian;

2. Count two as to defendant Anthony L. Demeo;

3. Count three as to defendants Detective Scott and Detective M. Eiserloffel.

IT IS FURTHER ORDERED that Patryna L. McQueen may file an amended complaint as discussed above, if she has a basis to do so, within 30 days of entry of this Order. If she does not file an amended complaint, this case will proceed on the surviving claims discussed above.

IT IS FURTHER ORDERED that the clerk of the court shall file the complaint and shall issue Summons to defendants Anthony L. Demeo, D. Thomassian, Detective Scott, and Detective M. Eiserloffel in their individual capacities, and deliver the same to the U.S. Marshal for service. Plaintiff McQueen shall have twenty days in which to furnish the U.S. Marshal with the required Form USM-285.2 Within twenty days after receiving from the **{2015 U.S. Dist. LEXIS 10}** U.S. Marshal a copy of the Form USM-285 showing whether service has been accomplished, McQueen must file a notice with the court identifying whether each defendant was served. If McQueen wishes to have service again attempted on an unserved defendant, she must file a motion with the court identifying the unserved defendant and specifying either (1) a more detailed name and/or address for that defendant or (2) whether some other manner of service should be attempted. Pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, service must be accomplished within 120 days from the date this order is entered.

IT IS FURTHER ORDERED that, from this point forward, McQueen shall serve upon the defendants, or, if appearance has been entered by counsel, upon the attorney(s), a copy of every pleading motion or other document submitted for consideration by the court. For any document McQueen submits for filing, she shall include a certificate stating the date that a true and correct copy of the document was mailed to the defendants or counsel for the defendants. The Court may disregard any paper received by a District Judge or Magistrate Judge which has not been filed with the clerk, and any paper received by **{2015 U.S. Dist. LEXIS 11}** a District Judge, Magistrate Judge, or the clerk which fails to include a certificate of service.

IT IS FURTHER ORDERED that this case is referred to the Pilot Pro Bono Program ("Program") adopted in General Order 2014-01 for the purpose of screening for financial eligibility (if necessary) and identifying counsel willing to be appointed as pro bono counsel for plaintiff Patryna L. McQueen. The scope of appointment shall be for all purposes through the conclusion of trial. By referring this

4yicases                                              4

© 2022 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

case to the Program, the court is not expressing an opinion as to the merits of the case.

IT IS FURTHER ORDERED that the Clerk shall also forward this order to the Pro Bono Liaison.

DATED this 10th day of August, 2015.

/s/ Andrew P. Gorgon

ANDREW P. GORGON

UNITED STATES DISTRICT JUDGE

### Footnotes

1

Although McQueen states she is suing the named defendants in their official capacities, she requests monetary relief. I therefore liberally construe her pro se complaint to assert claims against the named defendants in their individual capacities.

2

Available on the internet at:  .

© 2022 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.